GLENN L. HEIGERICK AND MAUREEN FRANCES HEIGERICK, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5674–64. Filed February 23, 1966.

*Charles J. Chastang*, for the petitioners.
*W. Dean Short*, for the respondent.

MULRONEY, *Judge:* Respondent determined a deficiency in petitioners' income tax for the year 1960 in the amount of $1,654.17.

Glenn L. Heigerick, who will be called petitioner, is an osteopathic physician, and the issue is whether his payment in 1960 of $3,000 to a hospital is properly deductible in full in that year as a business expense.

### FINDINGS OF FACT

Some of the facts have been stipulated and they are found accordingly.

Petitioner and his wife, Maureen Frances, live in Indian Hill, Ohio, and they filed their joint income tax return for the year 1960 with the district director of internal revenue in Cincinnati, Ohio. Petitioner has been a practicing osteopathic surgeon since prior to 1959 in the Greater Cincinnati area.

Petitioner and a group of other osteopathic physicians and surgeons in Cincinnati had been interested in getting an open-staff hospital established in Cincinnati since as early as 1941. They were barred from practice in all of the Cincinnati hospitals operating prior to 1960.

The Cincinnati Osteopathic Hospital Association, Inc., was incorporated under the laws of Ohio as a corporation not for profit on June 10, 1941. It was formed for the purpose of soliciting funds for an osteopathic hospital. The whole effort remained dormant until around 1955, after which the corporation began to collect funds from the general public and practicing doctors. The name of the corporation was changed to the Cincinnati Community Hospital Association, Inc., by amendment to its charter on November 18, 1959. The corporation started the construction of a hospital in the fall of 1958 and it was completed and opened for the acceptance of patients on February 12, 1960. At various times the hospital has been known as the Kenwood Hospital and as the Otto C. Epp Memorial Hospital. Hereafter this hospital will be referred to as the Epp Memorial Hospital.

The intention from the start was to have an open-staff hospital. However, sometime apparently in December of 1959 or January of 1960, funds were running short and Otto C. Epp, who had agreed to contribute nearly half a million dollars and who controlled the board of trustees, thought it would be necessary that the hospital, if it was to be a financial success, be made a closed-staff hospital, and be turned over to the medical profession. This would mean another hospital where the osteopaths could not practice.

However, a new board of trustees was elected and this board ultimately decided to open the hospital as an open-staff hospital and it was opened February 12, 1960, and it has remained an open-staff hospital.

Petitioner and a number of other Cincinnati osteopaths were among the original staff members of the Epp Memorial Hospital. They had

in 1959 made application for appointment to the medical staff of the Epp Memorial Hospital and petitioner's application had been accepted and petitioner, together with other 1959 applicants, was accepted and he was appointed to the medical staff at Epp Memorial Hospital in early November 1959. The assessments for staff membership at that time were $3,000 for a general practitioner, $5,000 for a minor specialist, and $8,000 for a major specialist. The assessments were payable as follows: For the general practitioner, $400 for the first year, $600 the second year, $1,000 for the third year, and $1,000 for the fourth year. The minor and major specialists were to pay their assessments in four annual equal installments.

All staff members of Epp Memorial Hospital were subject to dismissal from the staff if they failed to meet their financial obligations to the hospital, including payments due on their staff fees.

Article X of the Code of Regulations of Epp Memorial Hospital, as amended April 22, 1958, provides as follows:

#### MEDICAL STAFF

Section 1. There shall be a medical staff of the hospital which shall consist of qualified physicians and surgeons whose appointment shall be made by the Board of Trustees acting upon the advice of the Medical Staff. Staff membership shall be open to all physicians and surgeons who shall be qualified to practice the various medical arts under the Laws of the State of Ohio and the Rules and Regulations of the Medical Board of the State of Ohio, and who shall evidence in his practice and in his community a reputation in keeping with cannons [sic] and standards of the Medical Profession.

The Medical Staff of said hospital shall establish and adopt a set of By-Laws and Rules, subject to the approval of the Board of Trustees, designed to facilitate the internal operations and maintain the quality and efficiency of said staff.

Membership in and/or on said Medical Staff shall be for one year and annually the Board of Trustees of the Corporation shall elect members to or renew membership previously established in, or to the said Staff, acting upon the advice of the Staff previously given.

The Board of Trustees of the Corporation shall, upon the failure of the Staff to adopt proper By-Laws and Rules for the conduct of the members of the Staff, adopt such proper By-Laws and Rules and through the Administrator enforce them.

Article II, section 5(A), of the constitution and by-laws of the medical staff of Epp Memorial Hospital provides as follows:

(A) Appointments to the Staff shall be made by the Board of Trustees of the Hospital and shall be for a period of one year. At the end of the year, the Board of Trustees may reappoint all members of the Staff for another period of one year, providing the annual dues are paid within 90 days, and, providing the Staff has not recommended that any specific appointment shall not be renewed. Should the Board of Trustees wish to take the initiative in refusing to renew an appointment already made, or make an appointment, it shall do so only after conference with the Medical Staff.

478

Article III, section 1(F), of the constitution and by-laws of the medical staff of Epp Memorial Hospital provides as follows:

(F) Active Staff members shall be the only voting member of the Medical Staff. Each active Staff member shall be entitled to one (1) vote at the meeting of the Staff.

Petitioner was appointed to the medical staff of the Epp Memorial Hospital with minor specialist privileges, which means he had agreed to pay $5,000 for such medical staff privileges. He paid $3,000 to the hospital in 1960 to be applied on said staff privilege fee and deducted same as a business expense.

Respondent disallowed the $3,000 payment as a business deduction under section 162(a), I.R.C. 1954, explaining in his notice of deficiency that "it is not an ordinary and necessary business expense, but rather a capital expenditure under section 263 of the Internal Revenue Code." Respondent's determination allowed petitioner an amortized staff fee deduction of $109.29 explaining:

It is held that you are entitled to an amortization deduction, for staff privilege fees, of $109.29 computed on a life expectancy of 27.45 years.

OPINION

The issue here is whether the medical staff fees paid by petitioner to secure staff privileges at Epp Memorial Hospital are deductible under section 162(a) of the Internal Revenue Code of 1954. Deductibility under said statute can only be established by petitioner showing that the expenditure is within the statutory definition of "ordinary and necessary expenses" of carrying on the taxpayer's business which was that of the practice of osteopathy. The expenditure here was for the purpose of securing a business benefit, namely, the right to practice in the Epp Memorial Hospital. However, that fact alone does not make the expenditure deductible as a business expense.

Where the circumstances are such that the expenditure is in the nature of a capital outlay in the sense that it is calculated to result in a business advantage extending into the indefinite future, then it cannot be said to be an ordinary and necessary expense to be deducted in a single year of payment. *United States* v. *Akin*, 248 F. 2d 742, certiorari denied 355 U.S. 956; *Kauai Terminal, Ltd.*, 36 B.T.A. 893; *S. M. Howard*, 39 T.C. 833; *Mercantile National Bank at Dallas*, 30 T.C. 84, affirmed on another issue 276 F. 2d 58; and *Grace National Bank of New York*, 15 T.C. 563, affd. 189 F. 2d 966.

In *S. M. Howard, supra*, such staff fee payments by osteopaths to obtain the privilege of practicing in a hospital to be constructed were held to be capital outlays to secure long-term professional benefit for the taxpayers and not deductible in full as ordinary and necessary

expenses in the year paid. There are some differences in the facts of this case and the *Howard* case but we think they are insignificant on the issue to be decided.

Petitioner points out that in the *Howard* case the osteopaths secured lifetime staff privileges subject to revocation only by a two-thirds majority vote of the professional staff of the hospital. Here, although all appointments to the medical staff were made on an annual basis, they were renewable by the board of trustees except where cause existed for suspension or expulsion. The record shows that staff members knew that if the hospital was financially able to continue as an open-staff hospital they would be eligible for yearly reappointment and they reasonably anticipated that they would be reappointed each year as long as they abided by the rules and regulations of the hospital. It was in effect petitioner's testimony that he expected to be reappointed each year and, in fact, reappointment did occur and he was still a member of the staff at the time of trial. The staff membership here is just about the same as the life membership in *Howard*. The distinguishing fact is of no real significance.

Petitioner argues that the staff fees are recurring and he points to the adoption of a rule by the new board of trustees on February 10, 1960, to the effect that "members of the staff shall be required to pay to the corporation from time to time, according to the needs of the hospital, such sum or sums as the board of trustees, in their discretion, may require." There is no evidence that assessments levied under this authority have any relationship to the staff fees in question. We are here concerned with the rights and interests acquired by petitioner when he made the payment in order to become a member of the medical staff. These payments purchased staff rights that had no fixed relation to any period of time. The fact that staff members might be required to pay future assessments and charges based on annual dues or their use of the hospital or even to meet the needs of the hospital, is immaterial.

Petitioner argues that the staff fees paid to the hospital do not purchase any property right in the hospital.[1] That can be admitted. It is not necessary that the expenditure purchase a property right in the hospital in order to be a capital expenditure. It must be treated as a capital outlay if the payment was for a business benefit of the doctor extending well beyond the year of payment. *S. M. Howard, supra*.

We hold for respondent on the issue presented.

*Decision will be entered for the respondent.*

---

[1] Petitioner cites Rev. Rul. 65–269, 1965–2 C.B. 159. We fail to see how the said ruling has any relevancy here since it pertained to the status of the hospital as an exempt organization even though it restricted its facilities to doctors who paid staff fees.