JOEL A. SHARON AND ANN L. SHARON, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 6189-71, 3597-72.    Filed June 21, 1976.

*Joel A. Sharon* and Ann L. Sharon, pro se.
*David L. Gibson* and *William E. Saul,* for the respondent.

SIMPSON, *Judge:* The Commissioner determined deficiencies in the petitioners' Federal income tax in the amounts of $235.56 for 1969 and $653.70 for 1970. Due to concessions, the following issues remain for decision: (1) Whether one-sixth of the petitioners' rental and other costs of the apartment is deductible under either section 162(a) or section 212 of the Internal Revenue Code of 1954[1] as the cost of maintaining an office in their home; (2) whether the petitioners are entitled to amortization deductions under section 167(a)(1) with respect to certain educational and other expenses incurred to enable the petitioner Joel A. Sharon to obtain a license to practice law in the State of New York; (3) whether the petitioners may deduct or amortize costs incurred by the petitioner Joel A. Sharon in taking the California bar examination and miscellaneous expenses incurred in obtaining admission to courts in that State; (4) whether the petitioners may deduct under section 162, or amortize pursuant to section 167, the cost of petitioner Joel A. Sharon's admission to the Supreme Court of the United States; (5) whether the petitioners are entitled to depreciation deductions with respect to residential rental property owned by them; and (6) whether the petitioners are entitled to an award of Tax Court costs.

### FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

---

[1] All statutory references are to the Internal Revenue Code of 1954, as in effect during the years at issue, unless otherwise indicated.

During the years 1969 and 1970, and at the time of filing the petitions herein, Joel A. Sharon and Ann L. Sharon, husband and wife, resided in San Mateo, Calif. They filed their joint Federal income tax returns for the years 1969 and 1970 with the Internal Revenue Service Center, Ogden, Utah. Mr. Sharon will sometimes be referred to as the petitioner.

### Home Office Expenses

The petitioner was employed as an attorney by the Office of Regional Counsel, Internal Revenue Service, San Francisco, Calif., from February 1967 to March 1972. During 1969 and 1970, the petitioner set aside one room in his apartment to be used as an office. The office was a large room separated from the living room by sliding doors. The room was furnished with a desk, desk lamp, desk chair, room lamp, and a typewriter. The room also had a storage closet housing numerous files, clothing, and library books. The petitioner used the office for the following purposes: (1) Performing work in connection with his employment; (2) performing work in connection with investments and property held for the production of income; (3) reading and reviewing various professional books, journals, and other publications; and (4) handling personal correspondence.

In connection with his employment, the petitioner used the office for reviewing files, preparing for conferences, drafting briefs, and preparing Tax Court cases for trial. During the 2 years in question, he handled 8 or 10 trials for his employer.

The petitioner's employer did not require him to maintain an office at home or to work beyond regular working hours. He was given a set of keys to the office provided by his employer. His office at home was not better suited for the performance of his employment duties than the office provided by his employer.

When he thought it necessary or desirable to work extra hours, the petitioner found it more convenient to take his work home. The trains and buses ran less frequently after 6 p.m. If he arrived in San Mateo late, he would have to walk three-quarters of a mile to reach home, whereas if he arrived earlier, his wife could meet him at the station and drive him home. Also, by not staying at his employer's after hours, he saved the expense of buying dinner at a downtown restaurant.

The petitioner also used the office at his home as a place to do reading that he felt was necessary to keep current in the legal

profession. His reading matter included the American Bar Association Journal, the New York State Bar Journal, the California Bar Journal, the Journal of Taxation, CCH Tax Advance Sheets, and various newspapers and magazines of general interest. The subject matter of his reading included no-fault insurance, prepaid legal insurance, law school developments, legal ethics, and current developments in the tax law.

The office was also used in connection with the petitioner's investments. Books, records, and files pertaining to his investments were stored in the office. His activities in this regard included reading and answering correspondence, reviewing and preparing financial statements, and researching legal and financial data regarding possible investments.

The petitioner used the office for a maximum of approximately 15 to 20 hours per week. He kept no records regarding the use of the office, and the record does not disclose what portion of the time was spent in connection with his employment as opposed to the time spent in connection with his investments or other purposes. The office was not used by his children. Occasionally, his wife would assist him in the office, but she did not use it for any other reason. On infrequent occasions, when the petitioners entertained a large group, they would keep the sliding doors between the office and living room open and permit guests to use both rooms.

The following expenses were incurred in the use of the petitioner's apartment:

|  | 1969 | 1970 |
|---|---|---|
| Rent | $3,300 | $3,360 |
| Utilities | 180 | 180 |
| Insurance | 50 | 50 |
| Total | 3,530 | 3,590 |

The room used by the petitioners as an office represented one-sixth of their available apartment space. On their 1969 and 1970 joint Federal income tax returns, they claimed deductions for "Office in Home Expenses" in the amounts of $588.33 and $598.33, respectively.

### Bar Admission Expenses

The petitioner attended Brandeis University from September 1957 to June 1961 and received a bachelor of arts degree upon his

graduation. During his years at Brandeis, the following expenses were paid by or on behalf of the petitioner in connection with his education:

| | Academic year | | | | |
| | 1957-58 | 1958-59 | 1959-60 | 1960-61 | Total |
|---|---|---|---|---|---|
| Tuition and fees | $1,075 | $1,080 | $1,330 | $1,330 | $4,815 |
| Room and board | 1,340 | 1,340 | 1,340 | 1,480 | 5,500 |
| Books | 100 | 100 | 100 | 100 | 400 |
| Miscellaneous | 100 | 100 | 100 | 110 | 410 |
| Total | | | | | 11,125 |

After graduation from Brandeis University, the petitioner entered Columbia University School of Law, receiving a bachelor of laws degree in June 1964. While pursuing his law degree at Columbia University, the following expenses were paid by or on his behalf:

| | Academic year | | | |
| | 1961-62 | 1962-63 | 1963-64 | Total |
|---|---|---|---|---|
| Tuition and fees | $1,360 | $1,360 | $1,510 | $4,230 |
| Room and board | 2,130 | 0 | 0 | 2,130 |
| Books | 150 | 150 | 150 | 450 |
| Miscellaneous | 100 | 0 | 0 | 100 |
| Total | | | | 6,910 |

In order to be eligible to take the New York bar examination, the petitioner was required to graduate from a fully accredited 4-year undergraduate institution and give evidence of his successful completion of 3 years of study at an accredited law school. The petitioner expended a total of $210.20 in gaining admission to practice law in the State of New York. This amount included $175.20 for bar review courses and materials related thereto and a New York State bar examination fee of $25.

The petitioner was admitted to practice law in the State of New York on December 22, 1964. Thereafter, he was employed as an attorney by a law firm in New York City until 1967, when he accepted a position in the Office of Regional Counsel, Internal Revenue Service, and moved to California.

Although not required by his employer to be a member of the California bar, the petitioner decided to become a member of that State's bar after moving there. However, he found that the study of California law, which he undertook in preparation for the California bar examination, was helpful in his practice of law as an attorney in the Regional Counsel's office. The petitioner spent the following amounts in order to gain membership in the California bar:

| | |
|---|---:|
| Registration as law student in California_____ | $20 |
| California bar review course _____ | 230 |
| General bar examination fee _____ | 150 |
| Attorney's bar examination fee _____ | 375 |
| Admittance fee _____ | 26 |
| Total_____ | 801 |

In 1969, the petitioner also spent a total of $11 in order to be admitted to practice before the U.S. District Court for the Northern District of California and the U.S. Court of Appeals for the Ninth Circuit.[2] The petitioner's employer required only that he be admitted to practice before the U.S. Tax Court.

In 1970, the petitioner incurred the following expenses in connection with his admission to the U.S. Supreme Court:

| | |
|---|---:|
| Round trip air fare, San Francisco to New York _____ | $238.35 |
| Round trip rail fare, New York to Washington, and miscellaneous expenses _____ | 75.00 |
| Total_____ | 313.35 |

The petitioner's employer did not require that he be admitted to practice before the U.S. Supreme Court but did assist him in this matter. The Chief Counsel of the IRS personally moved the admission of a group of IRS attorneys, including the petitioner. Furthermore, two of his supervisors signed his application as personal references.

During 1970, the U.S. Supreme Court rules required a personal appearance before it in Washington, D.C., to be admitted to practice.

On their return for 1969, the petitioners claimed a deduction for "Dues and Professional Expenses" of $492. The Commissioner disallowed $385 of such deduction on the grounds that the disallowed portion was not a deductible business expense, but was a nondeductible capital expenditure. On their return for 1970, the petitioners claimed a deduction of $313.35 for the cost of petitioner Joel A. Sharon's admission to practice before the U.S. Supreme Court. The Commissioner also disallowed such deduction. In addition to challenging the disallowed deductions, the petitioners alleged in their petition that they were entitled to amortize or depreciate the cost of petitioner Joel A. Sharon's

---

[2] Although the parties stipulated that the total amount spent was $11, the petitioner testified that the total spent was $15. We find that the amount spent was $11.

education. The Commissioner denied this allegation in his answer.

### Depreciation on Rental Property

The petitioner acquired a single family residential building located at 1665 Borden Street, San Mateo, Calif., on November 30, 1970, at a cost of $31,269.15. The petitioner took the property subject to the unpaid balance of a 30-year note originally executed on April 14, 1964. The property was acquired as rental property.

The property was 15 years old when acquired by the petitioner. The building had a concrete foundation (no basement) and was a single-story structure of wood frame construction with a tar and gravel roof. There was a prior insurance policy outstanding on the property which insured the building for $25,000. The petitioner replaced that policy with his own policy likewise insuring the building for $25,000.

During 1970, the following amounts, attributable to the rental property, were paid by the petitioner:

| | | | |
|---|---|---|---|
| Taxes | $89.81 | Insurance | $67.00 |
| Interest | 137.15 | Miscellaneous | 78.52 |
| Advertising | 58.80 | | |
| | | Total | 431.28 |

Shortly after purchasing the rental property, the petitioner rented it for $295 a month. The total rent received for 1970 was $295. On their 1970 return, the petitioners claimed a net loss from their rental activity equal to the excess of the actual expenses plus a deduction for depreciation over the amount of rent received. In computing the depreciation deduction, the petitioner allocated $25,000 of the purchase price ($31,269.15) to the building and estimated the remaining useful life of the building to be 15 years. The petitioner's allocation of $25,000 to the building was based upon discussions with his real estate broker as to the value of the building, the amount of insurance carried on the building by the prior owner, and upon his own opinion as to the building's value. The remaining useful life estimated by the petitioner was based upon his own conclusion that the building was inexpensively and poorly constructed and had an original useful life of only 30 years.

At trial, the petitioner indicated that he had failed to claim on his 1970 return an allocation as to the personal property which

was purchased along with the building. He now claims that of the $25,000 originally allocated to the building, the following amounts should be allocated to items of personal property:

| | | | |
|---|---:|---|---:|
| Carpets (5 rooms) | $850 | T.V. antenna | $40 |
| Drapes (5 rooms) | 500 | Fireplace equipment | 30 |
| Hot water heater | 150 | Swing set | 90 |
| Dishwasher | 250 | | |
| Disposal | 60 | Total | 1,970 |

The petitioner claims a 6-year useful life for each of these items of personal property and maintains that he is entitled to an additional first-year depreciation allowance under section 179.

## Tax Court Costs

The petitioners paid the sum of $20 to this Court as the fees charged for filing their two petitions.

### OPINION

### 1. Home Office Expenses

The first issue to be decided is whether the petitioner may deduct one-sixth of the rental and other costs of his apartment for his "home office." The petitioner contends that one-sixth of such payments is deductible under either section 162(a) or section 212. The Commissioner, on the other hand, argues that such expenditures were personal in nature and are nondeductible under section 262. On virtually identical facts, we upheld a deduction of home office expenses under section 162(a). *Stephen A. Bodzin,* 60 T.C. 820 (1973), revd. 509 F.2d 679 (4th Cir. 1975), cert. denied 423 U.S. 825 (1975). However, since the Fourth Circuit reversed our decision in *Bodzin,* we take this opportunity to reexamine the law on this recurring issue.

We begin with the relationship between the Code provisions relied on by the parties. Section 162 falls within part VI of subchapter B and section 262 falls within part IX of subchapter B of chapter 1 of the Code. Section 161 provides that "there shall be allowed as deductions the items specified in this part [part VI], subject to the exceptions provided in part IX." Section 262, falling within part IX of subchapter B, thus carves out exceptions to what might otherwise be deductible expenses under section 162. The Supreme Court has recently recognized that the provisions in part IX take precedence over the provisions in part

VI. *Commissioner v. Idaho Power Co.,* 418 U.S. 1, 17 (1974); see also *Bodzin v. Commissioner,* 509 F.2d at 681. The petitioner, therefore, has the burden of showing that the disputed one-sixth of his apartment expenses was not a personal expense.

Section 262 disallows any deduction for personal living or family expenses, and section 1.262-1(b)(3), Income Tax Regs., provides:

(3) Expenses of maintaining a household, including amounts paid for rent, water, utilities, domestic service, and the like, are not deductible. A taxpayer who rents a property for residential purposes, but incidentally conducts business there (his place of business being elsewhere) shall not deduct any part of the rent. If, however, he uses part of the house as his place of business, such portion of the rent and other similar expenses as is properly attributable to such place of business is deductible as a business expense.

Under this regulation, the expense of maintaining one's residence is clearly a personal expense, and a taxpayer can take part of his apartment rent out of the nondeductible category only by showing that a portion of his residence constitutes a place of business. The petitioner has failed to make such a showing. He maintained an apartment for residential purposes and only incidentally used a spare bedroom, referred to as his office, for business purposes. He used such room as a place to do some reading and writing associated with his employment. This incidental use falls short of establishing that the room was his place of business.

The petitioner's occasional use of his home "office" rather than his IRS office was purely a matter of personal convenience, comfort, or economy. His spare bedroom was not better suited for doing his office work. Compare *Newi v. Commissioner,* 432 F.2d 998, 1000 (2d Cir. 1970), affg. a Memorandum Opinion of this Court; and *Clarence Peiss,* 40 T.C. 78 (1963). The petitioner's employer did not require or expect him to do any of his work at his home. To the contrary, his employer provided him with a suitable office which was accessible to a law library, and furnished him with a set of keys for entry during weekends and other off-duty hours. As a general rule, he did night work at home only during emergencies, e.g., immediately prior to a Tax Court trial session, while preparing a brief, or when called upon to handle the work of a fellow attorney on vacation. The only other use of the room for purposes in any way related to his work was

for reading professional and other journals.[3]

Notwithstanding certain testimony of record, we are not convinced that the petitioner rented a 3-bedroom rather than a 2-bedroom apartment, thereby incurring additional expenses, so that he would have a room for business use. In fact, he admitted that, shortly after the close of the tax years at issue, he bought additional furniture, and moved a couch, chair, and portable television set into the room and used it as a bedroom for guests. During the tax years at issue, he kept his personal files, personal correspondence, and clothing in the room. All these facts demonstrate that the expenses attributable to the room were essentially nondeductible personal expenses under section 262.

It is true that the Supreme Court has interpreted the word "necessary" as used in a predecessor of section 162(a) to mean "appropriate and helpful" in "the development of petitioner's business." *Welch v. Helvering,* 290 U.S. 111, 113 (1933). It is also true that the petitioner's utilization of a room in his apartment for occasional office work was appropriate and helpful in his work in the sense that it was fitting, proper, and useful. However, that is not sufficient for the purposes of section 162(a). The "appropriate and helpful" concept is not a litmus test. Where there is a mixture of personal and business considerations, that test, like the statutory "ordinary and necessary" test, requires a weighing and balancing of all the facts so that they may be given the proper order of importance, bearing in mind the precedence of section 262, which denies deductions for personal expenses, over section 162, which allows deductions for business expenses. Many expenses, such as the cost of commuting *(John C. Bruton,* 9 T.C. 882, 885 (1947)) and ordinary clothing *(Betsy Lusk Yeomans,* 30 T.C. 757, 768 (1958)), are helpful and even necessary to an individual's employment, but they are not deductible under section 162(a) because they are essentially personal. See *Carroll v. Commissioner,* 418 F.2d 91, 95 (7th Cir. 1969), affg. 51 T.C. 213 (1968). Many people in business or in the professions may, from time to time, find it convenient to take work home with them, but such occasional performance of business in the home does not convert a part of the home into a place of business. The

---

[3] The petitioner refers to use of the room in connection with his investments, but he tells us nothing of the nature and extent of his holdings and gives us no concrete facts as to how his use of the room contributed to the production of income within the meaning of sec. 212.

use of a portion of an apartment for business purposes for reasons of personal convenience, comfort, or economy will not support a deduction under section 162(a).

The facts here presented are so similar to the facts of the *Bodzin* case, where we allowed a home office expense deduction to an IRS attorney but were reversed by the Court of Appeals, we are unable to distinguish it. We shall no longer follow our opinion in *Bodzin.*

### 2. *Amortization of License to Practice Law in New York*

The next issue to be decided is whether the petitioner may amortize the cost of obtaining his license to practice law in New York. The petitioner contends that he is entitled under section 167 to amortize the cost of such license over the period from the date of his admission to the bar to the date on which he reaches age 65, when he expects to retire. In his cost basis of this "intangible asset," he included the costs of obtaining his college degree ($11,125), obtaining his law degree ($6,910), a bar review course and related materials ($175.20), and the New York State bar examination fee ($25).[4] As justification for including these education expenses in the cost of his license, he points out that, in order to take the New York bar examination, he was required to have graduated from college and an accredited law school.

The petitioners rely upon section 1.167(a)-3 of the Income Tax Regulations, which provides in part:

If an intangible asset is known from experience or other factors to be of use in the business or in the production of income for only a limited period, the length of which can be estimated with reasonable accuracy, such an intangible asset may be the subject of a depreciation allowance. * * *

There is no merit in the petitioner's claim to an amortization deduction for the cost of his education and related expenses in qualifying himself for the legal profession. His college and law school expenses provided him with a general education which will be beneficial to him in a wide variety of ways. See *James A. Carroll,* 51 T.C. 213, 216 (1968). The costs and responsibility for

---

[4] The parties stipulated that the petitioner expended a total of $210.20 in connection with gaining admission to practice law in New York. At the trial, the petitioner detailed the last two items listed above, but the record does not show for what specific purpose the other $10 was used.

The expenditures for the petitioner's college and law school education may have been furnished by his parents, but the Commissioner has not sought to deny the petitioners a deduction for that reason.

obtaining such education are personal. Section 1.262-1(b)(9) of the Income Tax Regulations provides that expenditures for education are deductible only if they qualify under section 162 and section 1.162-5 of the regulations. In the words of section 1.162-5(b), all costs of "minimum educational requirements for qualification in * * * employment" are "personal expenditures or constitute an inseparable aggregate of personal and capital expenditures." There is no "rational" or workable basis for any allocation of this inseparable aggregate between the nondeductible personal component and a deductible component of the total expense. *Fausner v. Commissioner,* 413 U.S. 838, 839 (1973). Such expenses are not made any less personal or any more separable from the aggregate by attempting to capitalize them for amortization purposes. *David N. Bodley,* 56 T.C. 1357, 1362 (1971); *Nathaniel A. Denman,* 48 T.C. 439, 446 (1967); *Huene v. United States,* 247 F. Supp. 564, 570 (S.D. N.Y. 1965). Since the inseparable aggregate includes personal expenditures, the preeminence of section 262 over section 167 precludes any amortization deduction. Cf. *Commissioner v. Idaho Power Co.,* 418 U.S. at 17; *Bodzin v. Commissioner,* 509 F.2d at 681. The same reasoning applies to the costs of review courses and related expenses taken to qualify for the practice of a profession. *William D. Glenn,* 62 T.C. 270, 274-276 (1974).

In his brief, the petitioner attempts to distinguish our opinion in *Denman* by asserting that he is not attempting to capitalize his educational costs, but rather, the cost of his license to practice law. Despite the label which the petitioner would apply to such costs, they nonetheless constitute the costs of his education, which are personal and nondeductible. Moreover, in his petition, he alleged that the capital asset he was seeking to amortize was his education.

There remains the $25 fee paid for the petitioner's license to practice in New York.[5] This was not an educational expense but was a fee paid for the privilege of practicing law in New York, a nontransferable license which has value beyond the taxable years, and such fee is a capital expenditure. Cf. *Arthur E. Ryman, Jr.,* 51 T.C. 799 (1969); *Glenn L. Heigerick,* 45 T.C. 475 (1966);

---

[5] In his petition, the petitioner only alleges that he should be allowed to amortize the cost of his education. However, the parties have tried and briefed this case as though the amortization of the petitioner's New York bar expenses were properly raised. Thus, we shall consider this issue. Rule 41(b)(1), Tax Court Rules of Practice and Procedure.

*S.M. Howard,* 39 T.C. 833 (1963); O.D. 452, 2 C.B. 157 (1920). The Commissioner has limited his argument to the educational expenses and apparently concedes that the fee may be amortized. Since the amount of the fee is small, the petitioner might, ordinarily, be allowed to elect to deduct the full amount of the fee in the year of payment, despite its capital nature. Cf. sec. 1.162-12(a), Income Tax Regs., with respect to the treatment of inexpensive tools. However, since the fee was paid prior to the years in issue, we cannot allow a current deduction in this case. Therefore, in view of the Commissioner's concession and our conclusion with respect to the third and fourth issues, a proportionate part of such fee may be added to the amounts to be amortized in accordance with our resolution of the third issue.

### 3. *License to Practice Law in California*

The next issue to be decided is whether the petitioner may deduct or amortize the expenses he incurred in gaining admission to practice before the State and Federal courts of California. The Commissioner disallowed the amounts paid in 1969 to take the attorney's bar examination in California and the amounts paid for admission to the bar of the U.S. District Court for the Northern District of California and for admission to the U.S. Court of Appeals for the Ninth Circuit. He determined that such expenses were capital expenditures. In his brief, the petitioner argues for a current deduction only if the costs of his license to practice in California are not amortizable.

It is clear that the petitioner may not deduct under section 162(a) the fees paid to take the California attorney's bar examination and to gain admission to practice before two Federal courts in California. In *Arthur E. Ryman, Jr., supra,* an associate professor of law sought to deduct as an ordinary business expense the cost of his admission to the bar of the State in which he resided. We held that since the taxpayer could reasonably expect the useful life of his license to extend beyond 1 year, the cost of such license was a capital expenditure and not a currently deductible business expense. Unlike the small fee paid to New York, the aggregate amount of such payments in 1969 is too large to disregard their capital nature and allow the petitioners to deduct them currently.

In connection with his alternative claim that he be allowed to amortize the costs of acquiring his license to practice law in

California, the petitioner asserts that such costs total $801. Such amount includes the cost of a California bar review course, registration fees, and other items specified in our Findings of Fact. However, the petitioner is in error in including the cost of his bar review course, $230, in the capital cost of his license to practice in California.

It is clear that the amount the petitioner paid for the bar review course was an expenditure "made by an individual for education" within the meaning of section 1.162-5(a) of the Income Tax Regulations. See *William D. Glenn,* 62 T.C. 270, 273-274 (1974); sec. 1.162-5(b)(2)(iii), example (3), Income Tax Regs. Although the petitioner was authorized to practice law in some jurisdictions when he took the California bar review course, such course was nevertheless educational in the same sense as the first bar review course. The deductibility of such educational expenses is governed by the rules of section 1.162-5 of the regulations. The evidence indicates that the petitioner took the California bar examination twice, the latter time in early 1969, so that the payment for the California bar review course must have been made in a year prior to 1969. Thus, even if such payment is otherwise deductible, it may not be deducted in 1969.

Nor may the petitioner treat the payment for the California bar review course as a part of the costs of acquiring his license to practice in California. Educational expenses which are incurred to meet the minimum educational requirements for qualification in a taxpayer's trade or business or which qualify him for a new trade or business are "personal expenditures or constitute an inseparable aggregate of personal and capital expenditures." Sec. 1.162-5(b), Income Tax Regs. We find that the bar review course helped to qualify the petitioner for a new trade or business so that its costs are personal expenses.

We have previously adopted a "commonsense approach" in determining whether an educational expenditure qualifies a taxpayer for a "new trade or business." *Kenneth C. Davis,* 65 T.C. 1014, 1019 (1976); *William D. Glenn,* 62 T.C. at 275; *Ronald F. Weiszmann,* 52 T.C. 1106, 1110 (1969), affd. 443 F.2d 29 (9th Cir. 1971). If the education qualifies the taxpayer to perform significantly different tasks and activities than he could perform prior to the education, then the education qualifies him for a new trade or business. *William D. Glenn, supra; Ronald F. Weiszmann, supra.* Thus, we have held that a professor of social

work is in a different trade or business than a social caseworker. *Kenneth C. Davis, supra.* A licensed public accountant is in a different trade or business than a certified public accountant. *William D. Glenn, supra.* A registered pharmacist is in a different trade or business than. an intern pharmacist, even though an intern performs many· of the same tasks as a registered pharmacist, but under supervision. *Gary Antzoulatos,* T.C. Memo. 1975-327.

Before taking the bar review course and passing the attorney's bar examination, the petitioner was an attorney licensed to practice law in New York. As an attorney for the Regional Counsel, he could represent the Commissioner in this Court. However, he could not appear in either the State courts of California, the Federal District Courts located there, nor otherwise act as an attorney outside the scope of his employment with the IRS. See Cal. Bus. & Prof. Code sec. 6125 (West 1974); 20 Op. Cal. Atty. Gen. 291 (1952). If he had done so, he would have been guilty of a misdemeanor. Cal. Bus. & Prof. Code sec. 6126 (West 1974). Yet, after receiving his license to practice law in California, he became a member of the State bar with all its accompanying privileges and obligations. He could appear and represent clients in all the courts of California. By comparing the tasks and activities that the petitioner was qualified to perform prior to receiving his license to practice in California with the tasks and activities he was able to perform after receiving such license, it is clear that he has qualified for a new trade or business. Consequently, the expenses of his bar review course were personal and are not includable in the cost of his license to practice law in California.

It is true that even before he became a member of the bar of California, the petitioner was engaged in the business of practicing law. Cf. *David J. Primuth,* 54 T.C. 374 (1970). However, in applying the provisions of section 1.162-5 of the regulations to determine whether educational expenses are personal or business in nature, it is not enough to find that the petitioner was already engaged in some ʾbusiness—we must ascertain the particular business in which he was previously engaged and whether the education qualified him to engage in a different business. Before taking the bar review course and becoming a member of the bar of California, the petitioner could not generally engage in the

practice of law in that State, but the bar review course helped to qualify him to engage in such business.

The Commissioner does not argue that the capital expenditures incurred in obtaining his license to practice law in California may not be amortized. In a series of cases, the courts have held that the fees paid by physicians to acquire hospital privileges are not current business expenses but are capital expenditures amortizable over the doctor's life expectancy. *Walters v. Commissioner,* 383 F.2d 922, 924 (6th Cir. 1967), affg. a Memorandum Opinion of this Court; *Glenn L. Heigerick,* 45 T.C. 475, 478-479 (1966); *S.M. Howard,* 39 T.C. 833, 838-839 (1963); compare *Wells-Lee v. Commissioner,* 360 F.2d 665, 672-673 (8th Cir. 1966), revg. and remanding in part a Memorandum Opinion of this Court. We hold that the petitioner may treat the costs of acquiring his license to practice in California in a similar manner. Such costs include:

| | | | |
|---|---|---|---|
| Registration fee | $20 | U.S. District Court fee | $6 |
| General bar exam fee | 150 | U.S. Court of Appeals fee | 5 |
| Attorney's bar exam fee | 375 | | |
| Admittance fee | 26 | Total | 582 |

Although the petitioner testified that he would retire at age 65 if he were financially able to do so, such testimony is not sufficient to establish the shorter useful life for which he argues.

We are aware that the petitioner's business as an employee of the Office of Regional Counsel did not require him to become a member of the California bar, and it may be argued that, within the meaning of section 167(a)(1), this intangible asset was not "used" in the petitioner's business during 1969 and 1970. However, the record does demonstrate that membership in the California bar was of some assistance to the petitioner in those years. Furthermore, when an attorney commences the practice of law, it is impossible to anticipate where his work will take him. He cannot with certainty establish what work he will receive and what bar memberships will be useful to him. Once he launches into the practice of law, he must decide what bars to join, and so long as there is some rational connection between his present or prospective work and those that he joins, we think that the expenses of joining them should be accepted as an appropriate cost of acquiring the necessary licenses to practice his profession. Since in 1969 and 1970, the petitioner was working in California, he had reason to anticipate that he might eventually leave the

Government and enter into the private practice of law in that State; thus, when that possibility is considered together with the immediate benefit to be derived from membership in the California bar, there was ample reason for him to join such bar at that time. For these reasons, we are satisfied that in 1969 and 1970, the petitioner did make use of the tangible asset constituting the privilege of practicing law in California.

### 4. Supreme Court Admission

The fourth issue to be decided is whether the petitioner may either deduct or amortize the cost of gaining admission to practice before the U.S. Supreme Court. The petitioner deducted the travel costs he incurred in 1970 in traveling to Washington, D.C., to be personally present for the Supreme Court admission, as required by that Court's rules. The Commissioner disallowed the deduction and argued in his brief that such expenditures were capital in nature since the petitioner acquired an asset with a useful life beyond 1 year.

In his brief, the petitioner concedes that he may not deduct the costs he incurred if we find that his license to practice before the Supreme Court is an intangible asset with a useful life of more than 1 year. For the same reasons that we have concluded that the petitioner's New York and California licenses were intangible assets with a useful life of more than 1 year, we also hold that his Supreme Court license is an intangible asset with a useful life exceeding 1 year. Thus, the petitioner may not deduct under section 162 the cost of obtaining such license.

In order for such license to be amortizable pursuant to section 167, the petitioner must show that it was property used in his trade or business. There is little evidence concerning the petitioner's "use" in 1970 of his license to practice before the Supreme Court. However, he did testify that the admission to various bars was a factor used in evaluating attorneys for promotion by his employer, and the Commissioner never disputed such testimony. Furthermore, it is altogether appropriate for any attorney-at-law to become a member of the bar of the Supreme Court whenever it is convenient for him to do so. No one can know when the membership in such bar may be useful to him in the practice of law—it may bring tangible benefits today, tomorrow, or never; yet, if one holds himself out to practice law, there is ample reason for him to acquire

membership in the bar of the Supreme Court. Under these circumstances, we find that the intangible asset acquired by becoming a member of such bar was used by the petitioner in 1970 and hold that he may amortize the costs of acquiring such asset over his life expectancy.

### 5. *Depreciation on Rental Property*

On November 30, 1970, the petitioners purchased rental property at a cost of $31,269.15. On their return for 1970, they claimed a loss resulting from the operation of this property. Due to concessions, the only issue to be decided is the correct amount of the depreciation deduction for 1970.[6]

The petitioner maintains that the purchase price of $31,269.15 should be allocated as follows:

| | |
|---|---|
| Building | $23,030.00 |
| Personal property | 1,970.00 |
| Land | 6,269.15 |

He argues that the remaining useful life of the building was 15 years and the remaining useful life of the personal property was 6 years. The Commissioner disallowed a deduction for depreciation, determining that the petitioner's allocation of value to the building was unreasonably high and that the assignment of useful life to the building was unreasonably low. He does not indicate what he would consider to be a reasonable allocation of the purchase price; nor does he indicate what he would consider to be a reasonable estimate of the building's remaining useful life.

The Commissioner's complete refusal to allow any depreciation on the building and personal property is not realistic. *Irene L. Bell,* 13 T.C. 344, 347-348 (1949). In arriving at the correct determination as to the amount of the allowable depreciation deduction, we must determine the petitioner's basis for depreciation and the useful life of the property to be depreciated. The only evidence presented on these issues was the petitioner's testimony, and the Commissioner did not cross-examine on these points. Under the rule of *Cohan v. Commissioner,* 39 F.2d 540 (2d Cir. 1930), we find that the petitioner's basis for depreciation in the building is $23,980 and that his basis for depreciation in

---

[6] On their return for 1970, the petitioners deducted a full year's depreciation on the rental property. In their brief, they concede that only 1 month's depreciation is allowable. See sec. 1.167(a)-10(b), Income Tax Regs.

the personal property is $1,020. We find that the remaining useful life of the building from the time of acquisition was 15 years and the remaining useful life of the personal property was 6 years.

The petitioners are not entitled to the additional first-year depreciation allowance under section 179 with respect to the personal property. The additional allowance under section 179 must be elected by the taxpayer. Section 179(c) provides that the election shall be made within the time prescribed by law for filing the return for the applicable year. Under section 1.179-4(a), Income Tax Regs., the election—

shall be made by showing as a separate item on the taxpayer's income tax return the total additional first-year depreciation claimed * * *. The additional first-year depreciation claimed with respect to section 179 property must not be included in the depreciation claimed under section 167 with respect to such property. * * *

The petitioners did not elect the additional first-year allowance for depreciation on their 1970 return and, therefore, are not entitled to the benefit of section 179. *Clinton H. Mitchell,* 42 T.C. 953, 968 (1964).

## 6. *Tax Court Costs*

There is no statutory provision for the reimbursement of the petitioners for the cost of filing their Tax Court petitions. Their reliance on the provisions of 28 U.S.C. sections 2412 [7] and 1920 [8] (1970 ed.), which allow costs to be taxed against the United

---

[7] Sec. 2412. Costs.

Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title but not including the fees and expenses of attorneys may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or official of the United States acting in his official capacity, in any court having jurisdiction of such action. A judgment for costs when taxed against the Government shall, in an amount established by statute or court rule or order, be limited to reimbursing in whole or in part the prevailing party for the costs incurred by him in the litigation. Payment of a judgment for costs shall be as provided in section 2414 and section 2517 of this title for the payment of judgments against the United States.

[8] Sec. 1920. Taxation of costs.

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

States, is misplaced. Those sections apply only to courts "the judges of which are entitled to hold office during good behavior." See 28 U.S.C. sec. 451 (1970 ed.).[9] The United States Tax Court was consciously excluded from that definition of a court. S. Rept. No. 1559, to accompany H.R. 3214, 80th Cong., 2d Sess. 2 (1948). Since there is no statutory authority for reimbursing the petitioners for the costs of filing their petitions, their claim therefor is denied.

To reflect the foregoing,

*Decisions will be entered under Rule 155.*

Reviewed by the Court.

RAUM and HALL, *JJ.,* did not participate in the consideration and disposition of this case.

DAWSON, *C.J.,* dissenting on Issue 1: I respectfully dissent from the majority's disallowance of the petitioner's home office expense deduction under section 162(a), I.R.C. 1954. I would adhere to the position previously taken by this Court in *Stephen A. Bodzin,* 60 T.C. 820 (1973), and not follow its reversal by the Court of Appeals for the Fourth Circuit.

The majority acknowledges that the Supreme Court has used an "appropriate and helpful" test, see *Welch v. Helvering,* 290 U.S. 111 (1933), when determining whether a claimed expense is "necessary." They find, however, that sections 262 of the Code and 1.262-1(b)(3), Income Tax Regs., operate to bar any home office deduction if the taxpayer habitually performs a more significant amount of work elsewhere at a "place of business." Although this regulation is, at first glance, susceptible to such an interpretation, I believe that the majority position will prove to be more restrictive in practice than Congress has intended.

I do not interpret the use of the phrase "incidentally performs business there" in section 1.262-1(b)(3), Income Tax Regs., to indicate that the taxpayer's *primary* place of business must be located within his residence in order to qualify for the deduction

---

[9] Sec. 451. Definitions.

As used in this title:

The term "court of the United States" includes the Supreme Court of the United States, courts of appeals, district courts constituted by chapter 5 of this title, including the Court of Claims, the Court of Customs and Patent Appeals, the Customs Court and any court created by Act of Congress the judges of which are entitled to hold office during good behavior.

in issue. Home office expenses unquestionably are deductible under section 162(a) in cases where the employee has no other office or where the taxpayer's duties may be performed more readily at home than at his designated office. See *Newi v. Commissioner,* 432 F.2d 998 (2d Cir. 1970); *Clarence Peiss,* 40 T.C. 78 (1963). At the other end of this spectrum they are non-deductible if they are not both appropriate and helpful. *Welch v. Helvering, supra.* However, section 162(a) sanctions other deductions falling between the extremes of this continuum, even if the expenses they represent are not specifically mandated by the exigencies of the taxpayer's business. In this way section 162(a) grants taxpayers some leeway in the conduct of their business affairs.

This petitioner's profession as a lawyer seemingly demanded more hours of work per week than he was required to remain in his employer's office. He conscientiously performed a substantial portion of his duties at home in an area used primarily for such legal work. Thus, I would allow the claimed deduction as long as his use of the facilities significantly furthered the conduct of his professional affairs, even though there was no compelling business reason requiring him to work at home. I find interposed between "primary" and "incidental" a category of business effort properly entitled "substantial" or "significant" which qualifies this deduction under section 162. We cannot disregard 15 or 20 hours of additional effort per week when a regular workweek for the taxpayer consists of only 40 hours. Accordingly, I would permit the instant deduction whenever a taxpayer could prove that he expended more than an incidental amount of effort in his home office.

The majority's position is far too sweeping in its denial of deductions for ordinary and necessary business expenses. Many peripheral decisions by employees take convenience into consideration, but its presence in the decision-making process does not alter the nature of the work being performed. I think the majority has unduly relied upon this element in reaching its decision.

Certainly the most appropriate solution to this controversy would be an unequivocal statement from the Congress. Section 162(a) was drafted and enacted in general terms in accordance with a congressional intention that the judiciary give more concrete meaning to those terms on a case-by-case basis. Never-

theless, when cases turn on congressional intent and the judiciary cannot agree, Congress should step in and resolve the issue. If a new and more restrictive test for business expenses is needed, then it should be imposed by the Congress, not by the judiciary.

STERRETT and GOFFE, *JJ.,* agree with this dissent.

SCOTT, *J.,* dissenting: I respectfully disagree with the conclusion of the majority that the $25 license fee paid by petitioner to New York, the $571 paid to take the California bar examination, the $11 for admission to practice before two Federal courts in California, and the $313.35 paid for travel to Washington, via New York, to practice before the United States Supreme Court are properly amortizable over petitioner's life expectancy. I agree that these expenditures, except for transportation to Washington, via New York, the place of the home of petitioner's family, are capital expenditures. However there is nothing in this record to show the reasonable useful life of these expenditures. How long petitioner will practice law and where are so conjectural as to cause there to be no way to ascertain the reasonable useful life of the asset petitioner acquired through his capital expenditures. Although respondent apparently makes no contention that the trip to Washington, via New York, when petitioner was admitted to practice before the Supreme Court was personal, the clear inference from the fact that he did go to New York where his family lived before coming to Washington and returned there after he came to Washington is that petitioner went to New York to visit his family and incidentally came to Washington to be admitted to practice before the Supreme Court. However, if the view of the majority, that the cost of travel to Washington, via New York, was properly part of the cost of petitioner's admission to practice before the Supreme Court, were proper, then this, as the other capital expenditures, should not be amortizable since the useful life of the asset acquired is not reasonably ascertainable.

STERRETT, *J.,* agrees with this dissent.

IRWIN, *J.,* dissenting: I disagree with that portion of the majority opinion which holds that petitioner may not treat the payment for the California bar review course as a part of the cost

of acquiring his license to practice law in California. In the past, we have indeed adopted a "commonsense approach" in determining whether an educational expenditure qualifies a taxpayer for a new trade or business. *Kenneth C. Davis,* 65 T.C. 1014, 1019 (1976); *William D. Glenn,* 62 T.C. 270, 275 (1974); *Ronald F. Weiszmann,* 52 T.C. 1106, 1110 (1969), affd. 443 F.2d 29 (9th Cir. 1971). However, I think we depart from that approach when we hold that an attorney, licensed to practice law in New York, qualifies for a new trade or business when he obtains a license to practice law in California. In *William D. Glenn, supra* at 275, we stated:

We have not found a substantial case law suggesting criteria for determining when the acquisition of new titles or abilities constitutes the entry into a new trade or business for purposes of section 1.162-5(c)(1), Income Tax Regs. What has been suggested, and we uphold such suggestion as the only commonsense approach to a classification, is that a comparison be made between the *types of tasks and activities which the taxpayer was qualified to perform before the acquisition of a particular title or degree, and those which he is qualified to perform afterwards. Ronald F. Weiszmann,* 52 T.C. 1106, 1110 (1969), affd. 443 F.2d 29 (C.A. 9, 1971). Where we have found such activities and abilities to be significantly different, we have disallowed an educational expense deduction, based on our finding that there had been qualification for a new trade or business. *Ronald F. Weiszmann, supra.* [Emphasis supplied.]

In my view there is no difference in the *types* of tasks and activities which petitioner was qualified to perform before and after he acquired his California license. By virtue of being licensed to practice in California, petitioner could perform the same types of tasks and activities in that state as he was already qualified to perform in New York. In this regard, respondent takes the position that once an individual is qualified to teach in State A, a college course taken in order to qualify for a teaching position in State B is neither a minimum educational requirement of his trade or business nor education qualifying him for a new trade or business. Rev. Rul. 71-58, 1971-1 C.B. 55. I would similarly conclude that once an individual is qualified to practice law in one State, a bar review course taken in preparation for the bar exam of another State is not education leading to qualification for a new trade or business.

STERRETT, *J.,* dissenting: I disagree with the majority's conclusion that the costs incurred by petitioner in acquiring the

licenses involved herein are amortizable over his life expectancy. Although the fees in question are undoubtedly business related, it seems clear to me that the realities of life preclude any rational method by which the useful life thereof can be estimated with any reasonable accuracy. As the majority recognizes at page 530, "Furthermore, when an attorney commences the practice of law, it is impossible to anticipate where his work will take him. He cannot with certainty establish what work he will receive and what bar memberships will be useful to him." What the licenses do is afford petitioner the opportunity to earn fees for appearances in court for an indefinite period of time; namely until his retirement or withdrawal from practice, his death, or in the case of the State licenses his commencement of practice in another State, whichever event occurs first. Such indefiniteness should preclude amortization of the cost of the licenses. *Formico v. Commissioner,* 491 F.2d 788 (9th Cir. 1974); *Ralph Vander Hoek,* 51 T.C. 203 (1968).

To allow the deductions for amortization of these fees is a triumph of the esoteric over the practical.

SCOTT, *J.,* agrees with this dissent.