WILLIAM M. ROBERTS AND BONNIE B. ROBERTS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Roberts v. Commissioner
Docket No. 9989-76.
United States Tax Court
T.C. Memo 1979-250; 1979 Tax Ct. Memo LEXIS 278; 38 T.C.M. (CCH) 1000; T.C.M. (RIA) 79250; June 28, 1979, Filed *278 Held: 1. Petitioner William's proferred testimony of his recollection of what his wife told him about her working conditions is inadmissable hearsay. 2. Office in home expense for teacher not allowed. 3. Portion of rent paid for a duplex apartment in which petitioners lived attributable to space used by William to study and work on thesis while a post-graduate student at Harvard Law School not allowed. William M. Roberts, pro se. Wesley J. Lynes, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: *279 Respondent determined a deficiency in petitioners' income tax for 1973 in the amount of $225.85. The issues presented are: (1) Whether testimony of petitioner William M. Roberts concerning the working conditions provided by petitioner Bonnie B. Roberts' employers during the taxable year at issue is admissible or inadmissible hearsay; (2) Whether petitioner Bonnie B. Roberts' use of the home as an office during 1973 constitutes an ordinary and necessary business expense under section 162(a), I.R.C. 1954; [1] and (3) Whether petitioner William M. Roberts' use of the home in order to prepare a graduate thesis and to study constitutes an education expense deductible under section 162(a). FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts together with its attached exhibit is incorporated herein by reference. Petitioners William M. Roberts and Bonnie B. Roberts were married and resided in Memphis, Tenn., at the time of filing the petition in this case. The *280 Roberts have divorced since that time, Bonnie Roberts using the name Bonnie Greer at the time this case was tried. Both petitioners resided in Memphis at the time the case was tried. They filed a joint income tax return for 1973 with the Director, Internal Revenue Service Center, Andover, Mass.
William and Bonnie lived in Indiana during the first part of 1973 and in Massachusetts during the latter part of 1973. From January through August Bonnie was employed as a teacher at Indiana University in Bloomington, where she earned $2,806, and was also employed by Stone Belt Center for Retarded Children, Inc., where she earned $5,145. During 5 months of 1973 William was also employed as a teacher at Indiana University in Bloomington, where he earned $5,400. He was provided an office during his employment with the University. Petitioners' home in Indiana consisted of a living room, a kitchen, a dining room, and one bedroom and had a fair rental value of $145 per month. During the last 5 months of 1973 William was a graduate student at Harvard Law School in Massachusetts. During the last 4 months of 1973 Bonnie was an assistant professor at Bridgewater State College, Mass; where *281 she earned $4,559.40. During this period petitioners lived in a duplex apartment which consisted of a living room, kitchen, dining room, two bedrooms, and a bath. The rent was $300 per month. In order to obtain a graduate degree at Harvard Law School, William was required to submit a thesis. The facilities at Harvard Law School included lookable carrels and rooms were limited in number and were assigned to students by priority based on age. Because of this policy William was unable to obtain a lockable carrel or room in which to prepare his thesis. Because of the possibility of theft or interference with his work William decided to work on his thesis at home rather than in an unlockable carrel. William used one of the bedrooms in the duplex exclusively for researching and writing the thesis as well as studying. He also used the dining room table and shelves in the dining room for the same purpose. William estimated he used the bedroom for studying or preparing his thesis 4 hours per night, six nights a week. On their income tax return for 1973, petitioners deducted $530 as a business expense for "use of home for business." This amount was computed by taking 25 percent of *282 the rental value of their apartment in Bloomington ( $145) times 8 months and by taking 20 percent of the rental value of the duplex ( $300) times 4 months. These deductions are attributable to Bonnie's use of their apartments as an office. In addition they deducted $500, as part of $2,768.52 in educational expenses, for an office for "study and research." This figure was computed by multiplying one-third $300of times 5 months. In the notice of deficiency respondent disallowed the $530 claimed for offices in the homes. He also disallowed the $500 claimed for use of the home for study and research; however, the remaining $2,268.52 in education expenses was allowed. The claimed deductions were disallowed on the grounds that it had not been established that the expenses constituted ordinary and necessary business expenses or that the apartments had been used for the purposes designated. OPINION The first issue is whether petitioners may deduct under section 162(a)[3] a portion of the rentals paid for the apartments attributable to Bonnie's use of the apartments as an office during 1973. Petitioners' principal evidence in support of the deduction was William's proferred *283 testimony, subject to respondent's hearsay objection, concerning the working conditions provided by Bonnie's employers and the requirements of her jobs. For some reason not explained by the record Bonnie Roberts Greer decided not to appear as a witness at the trial although she had joined with William Roberts in filing the petition herein. That Bonnie was not going to appear voluntarily was known to William prior to the trial but he did not subpoena her as a witness. Unbeknownst to William Bonnie signed the stipulation of facts submitted at trial 3 days prior to the trial and apparently has decided to accept the outcome of this case as determinative of her joint and several liability for the taxable year at issue. William thereupon took the stand and testified to the best of his recollection what Bonnie had told him about her working conditions at her two places of employment during *284 1973. Conceding that his testimony is hearsay, William nonetheless contends that it is admissible under the exception to the hearsay rule set forth in Rule 803(24), Federal Rules of Evidence, see infra . He further argues that public policy requires admission of this testimony because respondent went behind his back and obtained Bonnie's signature to the stipulation to William's surprise and detriment. Rule 803(24), Federal Rules of Evidence, provides in pertinent part: The following are not excluded by the hearsay rule, even though the declarant is available as a witness: * * *
(24) Other exceptions.--A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be *285 served by admission of the statement into evidence. * * * William propounds several reasons to justify our reliance upon the above-quoted exception. First, he argues that his status as a licensed attorney testifying under oath and subject to cross-examination establishes the trustworthiness of his testimony. However, as respondent points out, it is the trustworthiness of the statements purportedly made by the declarant, Bonnie, with which we must be concerned. Unfortunately, there is little in the record from which this can be inferred. A perusal of other exceptions to the hearsay rule reveal that trust-worthiness of the declarant's statement is guaranteed by admitting statements made in situations in which the declarant's opportunity to fabricate, exaggerate, or misconceive are alleviated or eliminated. See also Dallas County v. Commercial Union Assurance Co.,286 F. 2d 388, 397 (5th Cir. 1961). While we have no reason whatsoever to believe that if Bonnie made the statements to William she was lying, we do not that the statements are selfserving under the circumstances. Moreover, Bonnie's failure to appear voluntarily and relate the circumstances of her *286 employment casts some doubt in our mind as to the trustworthiness of her statements as repeated by William. [4]
William also contends without elaboration that he made reasonable efforts to procure the appearance of his ex-wife. However, realizing that absent her testimony he was faced with a hearsay problem, he did not subpoena her as a witness even though she lived in Memphis. He justifies his inaction by contending that a formal procedure would be futile given her decision not to appear voluntarily and might exacerbate their already poor relationship. Quite frankly, this reasoning is specious. Unless Bonnie were willing to risk contempt of court by failure to obey the subpoena, see Rule 147(e), Tax Court Rules of Practice and Procedure, the issuance of a subpoena cannot be seen as an exercise in futility. And given that the parties were divorced at the time of the *287 trial we are at a loss as to why William would be so concerned about further disharmony as to jeopardize a portion of his case. Finally, William contends that the interests of justice will be served by admitting his testimony. This argument dovetails with his position that the securing by respondent of Bonnie's signature on the stipulation of facts was underhanded and prejudicially surprised William. We simply do not comprehend the thrust of this position. As respondent points out, William was going to have to testify concerning Bonnie's employment regardless of whether she signed the stipulation and that testimony still would be hearsay. Moreover, the prejudice to William because the stipulation was signed by Bonnie and admitted in evidence is not overly apparent. William had signed the stipulation and therefore was aware of its contents. Furthermore, his insinuation that respondent has acted in an underhanded manner by obtaining Bonnie's signature is without foundation. Upon proper motion by respondent the undisputed facts could have been deemed stipulated with respect to Bonnie, as a party to this action.See Rule 91(f), Tax Court Rules of Practice and Procedure.We are unable *288 to perceive any unfairness or deviousness in respondent's action. Therefore, while we are not totally unsympathetic to William's predicament, we do not believe William has shown that his testimony as to what Bonnie told him is admissible under the exception to the hearsay rule provided in Rule 803(24), Federal Rules of Evidence. Respondent's objection to this testimony is sustained. Excluding William's testimony concerning the conditions of Bonnie's employment obviates any further discussion of the deductibility under section 162(a) of the home office expense. There is no evidence in the record that the rooms used by Bonnie constituted her place of business or that the use of the apartments was required by her employers as a condition of employment. Sharon v. Commissioner,66 T.C. 515, 523 (1976), affd. per curiam 591 F.2d 1273 (9th Cir. 1978), cert. denied June 18, 1979; sec. 1.262-1(b)(3), Income Tax Regs. In the absence of such a showing, we have no choice but to conclude that the rental payments were personal living expenses and thus nondeductible pursuant to section 262. [5]
*289 The remaining issue is whether petitioners may deduct a portion of the rent they paid for the duplex in which they lived in Massachusetts attributable to William's use as a place to study and work on a thesis while he was a graduate student at Harvard Law School. William contends that because he was not assigned a lockable room or carrel at the law school, he set aside one of the bedrooms and part of the dining room at the duplex as the area in which he studied and worked on his thesis, which was required for the graduate degree he was seeking. He contends that the rooms set aside constituted his business office and that the rent attributable to those rooms is an education expense deductible under section 162(a). [6]
Generally speaking, rental payments are considered nondeductible personal expenditures under *290 section 262, which takes precedence over section 162. Sharon v. Commissioner, supra at 522-3. But section 1.262-1(b)(3), Income Tax Regs., states: A taxpayer who rents a property for residential purposes, but incidentally conducts business there (his place of business being elsewhere) shall not deduct any part of the rent. If, however, he uses part of the house as his place of business, such portion of the rent * * * as is properly attributable to such place of business is deductible as a business expense. Assuming that William was engaged in the business of being a teacher or a lawyer, there is no evidence that he was using the duplex to conduct either one of those businesses. He was using the duplex in connection with attending law school as a student, and the latter activity is not conducting either the practice of law or teaching. So no part of the rent would be deductible under the above regulation. However, it has been recognized that education expenses may, under some circumstances, be deductible under section 162 as a business expense. *291 Section 1.162-5(a), Income Tax Regs., provides expenditures made by an individual for education are deductible as ordinary and necessary business expenses if the education (1) maintains or improves skills required by the individual in his employment or other trade or business, or (2) meets the express requirements of the individual's employer or the requirements of law or regulations to retain an employment relationship or status. We must conclude from William's lack of earnings during this period that he was not employed by anyone, so the education could not be required by William's employer. Thus, the question is does the use of one's apartment to study and write a thesis have a sufficient nexus to William's trade or business to overcome nondeductibility as a personal expense under section 262 and to qualify as an ordinary and necessary business expense under section 162. We think not.[7]
As heretofore noted, *292 we do not know the reasons for William's enrollment in Harvard Law School. The evidence does not reveal whether William was on leave of absence from Indiana University, whether he intended to return to teaching, or to enter the practice of law, or what his plans were. Without such information we are unable to determine whether the additional education maintained or improved skills required by William in his trade or business. This is a question of fact and the burden of proof is on petitioner. Schwartz v. Commissioner,69 T.C. 877 (1978), on appeal (2d Cir. Feb. 16, 1979). Petitioners have failed to carry that burden.
Furthermore, we think it is clear that William's decision to study at home rather than at the law school was a personal preference, just as it is to many other law students at Harvard and other law schools across the land. We are certain that the facilities for study, research, and writing at Harvard Law School are adequate. The portion of the rental paid by petitioners attributable to the rooms used by William for study and writing was not an ordinary or necessary expense of William's business but was a nondeductible personal expense. Decision *293 will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year at issue, unless otherwise specified.↩
3. Sec. 162(a) states: (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *.↩
4. We recognize, of course, that the rather small deficiency involved in this case may well have contributed to Bonnie's decision not to appear. However, that possibility is not germane to indicia of trustworthiness.↩
5. Sec. 262↩ provides that "[except] as otherwise expressly provided in this Chapter, no deduction shall be allowed for personal, living, or family expenses."
6. The circumstances surrounding William's enrollment at Harvard Law School are not apparent from the record. However, respondent allowed, apparently as education expenses, claimed deductions for tuition, books, xeroxing, typewriter, and transportation totaling $2,268.52.↩
7. We are not concerned with whether this expense would qualify as an expense of traveling away from home to obtain education, because we have no evidence that petitioner's home was anywhere other than the vicinity of Harvard Law School.↩