Maurice Victor Barnhill and Nannie C. Barnhill v. Commissioner
Barnhill v. Commissioner
Docket Nos. 37, 38.
United States Tax Court
1944 Tax Ct. Memo LEXIS 224; 3 T.C.M. (CCH) 514; T.C.M. (RIA) 44187; May 31, 1944
*224 Held, that petitioner, an Associate Justice of the Supreme Court of North Carolina, is not entitled to deduct traveling expenses, including the cost of meals and lodging, incident to his attendance upon the Court at Raleigh, the city in which the Court is required to sit. W. H. Holderness, Esq., P.O. Box 569, Greensboro, N.C., for the petitioner. Edward M. Woolf, Esq. for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: This is a consolidated proceeding involving income tax deficiencies for the years 1939 and 1940 in the respective amounts of $113.24 and $164.49. The sole question in controversy is whether Maurice Victor Barnhill, whom we shall call "petitioner," is entitled to deduct traveling expenses, including the amount spent for meals and lodging, while away from his Rocky Mount, N.C. residence. Another adjustment to petitioner's 1939 income has been settled while other adjustments in 1940 income are conceded. The tax returns for the years in question were filed with the collector for the district of North Carolina at Greensboro. Findings of Fact Petitioner is an Associate Justice of the Supreme Court of North Carolina and has been such since *225 his appointment in July, 1937. In 1938 he was elected to this office for a term of eight years commencing January 1, 1939. The duties as judge require his presence in Raleigh, North Carolina, the State Capitol, where the Court sits. Two terms of court are held each year, one beginning on the first Monday in February and the other on the first Monday in September. Prior to July, 1937 petitioner was a Superior Court judge and resided in Rocky Mount, N.C., where he owned a home. He continued to maintain and keep open this home in 1939 and 1940. It was continuously occupied by some member of his family. There is an unwritten law in North Carolina that there shall be a geographical distribution of Supreme Court Justices and each has always maintained his legal residence in the section of the State from whence he came. When in Raleigh, during the years in question, petitioner stayed at the Sir Walter Hotel where he engaged a room by the year at a rate of $65 per month. It was more economical to engage a room on this basis than by the day or week. During term petitioner drove back to Rocky Mount, a distance of sixty miles, almost every week. After term petitioner returned to Rocky Mount *226 but drove to Raleigh two or three times each month to care for matters connected with his judicial duties. He made 46 round trips between the two cities in 1939 and 44 in 1940. Computed at the rate of 5 cents per mile, his transportation costs were $276 and $264 for the two years, respectively. Petitioner estimated his meals while in Raleigh to have cost $557.50 in 1939 and $516 in 1940. No account was kept of actual expenditures either for meals or transportation costs. During the taxable years petitioner owned three farms, two of which were located near Rocky Mount. One of these was rented on shares and, although petitioner had an overseer, he attempted to give his farm frequent personal attention. The other farms and one house, purchased in October 1939 and held for rental, were let for cash rent. Petitioner devoted very little time to the management of these properties. Petitioner reported as net income from all his real properties the sum of $405.00 in 1939 and $344.77 in 1940. The latter figure reflected a mathematical error and should have been $544.77. In other years petitioner's income from these sources was substantially greater. Petitioner also was a director and stockholder *227 in the Simmons & Harris Real Estate and Insurance Company of Rocky Mount. He received no director's fee. The dividends on his stock amounted to $214.40 and $283 in the two years, respectively. It was not necessary for petitioner to attend to his duties as director of Simmons & Harris upon each of his trips back to Rocky Mount. Prior to 1939 the salary of an Associate Justice of the Supreme Court of North Carolina was $7,500 and each member of the Court was allowed $500 for travel expenses. In 1939 the North Carolina legislature passed a bill which provided, in part, as follows: "In lieu of and in commutation for expenses incident to attendance upon the Court an amount equal to that allowed to each Judge of the Superior Court, payable in equal monthly installments as part of his compensation. Effective July 1, 1939." The amount allowed Superior Court Judges was $1,550 per year. The $7,500 salary was continued. In 1939 petitioner reported as salary from the State $7,500 plus $1,025 expense allowance. From this sum he deducted "hotel, board and traveling expenses of $1,500." Respondent has disallowed the deduction. In 1940 petitioner reported as salary from the State $7,500 with the *228 notation, "State pays official expenses." Respondent increased petitioner's salary by the additional $1,550 received from the State and held no expense deduction allowable. Petitioner's sole business in 1939 and 1940 was that of an Associate Justice of the Supreme Court of North Carolina. His place of business was in Raleigh. Opinion The only question here presented is whether petitioner, an Associate Justice of the Supreme Court of North Carolina, is entitled to deduct the amounts expended for board and lodging at Raleigh, the seat of the State government, and his expenses in going to and from Raleigh and the city of his legal residence. Petitioner asserts that such expenditures are deductible under section 23 (a) (1) of the Internal Revenue Code. Respondent contends to the contrary and says that the items constitute personal, living or family expenses the deduction of which is disallowed by section 24 (a) (1) of the Internal Revenue Code. Similar questions have been resolved in many prior decisions, sometimes in favor of the taxpayer and sometimes against him. Determinative factors are the locale of the business in which the taxpayer is engaged, the permanency of his employment *229 in that particular business, and the existence or non-existence of other business occupations requiring the presence of the taxpayer at more than one spot. Under section 23 (a) (1)supra, or similar provisions of prior acts, a taxpayer may not keep his place of residence at a point where he is not engaged in carrying on a trade or business and take a deduction from gross income for his living expenses while away from home and costs in going back and forth. Mort L. Bixler, 5 B.T.A. 1181. For the purposes of the statute, a taxpayer's "home" means his business location, post or station. George W. Lindsay, 34 B.T.A. 840; William Lee Tracy, 39 B.T.A. 578; Walter M. Priddy, 43 B.T.A. 18. Deductions for traveling expenses may be had only when the business requires the taxpayer to be away from "home" as used in that sense. Charles E. Duncan, 17 B.T.A. 1088, affirmed 47 Fed. (2d) 1082. On the other hand, traveling expense deductions are not to be disallowed when the employment which takes the taxpayer *230 away from his usual abode is temporary. Harry F. Schurer, 3 T.C. 544; Coburn v. Commissioner, 138 Fed. (2d) 763. Moreover, we have recognized that a taxpayer may have more than one occupation or business. When it was shown that the taxpayer had two occupations which required an approximately equal division of his time between two different cities, we have approved a deduction of the ordinary and necessary expenses connected with attendance upon the one removed from his legal residence. Walter F. Brown, 13 B.T.A. 832; Joseph W. Powell, 34 B.T.A. 655. Petitioner seeks to draw an analogy between the present facts and those which impelled decisions favorable to the taxpayers in the Coburn, Brown and Powell cases. He contends that his occupation as Associate Justice was temporary and that he also was engaged in other business located in and about Rocky Mount, N.C. We can not accept either contention. On January 1, 1939, the first day of the first taxable year involved in this proceeding, petitioner was commencing an eight year term on the North Carolina *231 Supreme Court bench. While the word "temporary" is a relative term which withstands efforts to accord it a specific limit as descriptive of time, we opine that it embraces a period far less than eight years when used in relation to an individual's productive business life. Certainly the Coburn case does not suggest otherwise. There the "temporary" employment resulted from five motion picture contracts which guaranteed work for periods not exceeding four weeks each. Moreover, they were not obtained simultaneously but successively. Nor does the Schurer case help petitioner. There the taxpayer, a journeyman plumber and member of a Pittsburgh, Pa. local union, at the latter's request accepted war construction work in neighboring cities. Each job was bound to end with the completion of the construction. The longest, in fact, lasted 33 weeks. We conclude that petitioner was not present in Raleigh in connection with a temporary business or occupation. Furthermore, the facts fail to prove that petitioner was engaged in any business save that as a judge and we have so found. Admittedly, he was a director of a Rocky Mount real estate and insurance concern. However, his duties as *232 such do not appear to have been large and, in any event, he expected and received no compensation for what services he did perform. Clearly there was no profit motive here. The dividends, of course, were receivable by reason of his ownership of stock and constituted income from an investment, not from business. The same must be said of the income from the rental of petitioner's real property. While one of the farms was rented on shares, this is a common arrangement in the letting of farm properties and does not thereby place the landlord in the business of farming. The two other farms and the house were let for cash rent and required no more than casual attention from petitioner. The relatively minor amount of income from, time spent upon and properties involved preclude a finding that petitioner was engaged in the investment business. Since petitioner's permanent business was that of Associate Justice of the Supreme Court of North Carolina and since this business was conducted entirely at Raleigh, it follows that Raleigh must be regarded as petitioner's "home", as that term is used in section 23 (a) (1) of the Internal Revenue Code. Hence he is entitled to no deduction for traveling *233 expenses to Raleigh, including the cost of meals and lodging while there, and we so hold. It is immaterial that petitioner was expected to retain his legal residence at Rocky Mount. Persons holding public office frequently are obliged to maintain their preelection domicile. This was the case in George W. Lindsay, supra; where petitioner, a Congressman, was held to have his "home" in Washington, D.C. within the meaning of the controlling statutory provision. Nor is an opposite result called for because the State of North Carolina saw fit to pay petitioner additional compensation in lieu of and in commutation for expenses incident to attendance upon the Court. It was within the State legislature's power and privilege to recognize and provide for such expenses. But this does not make them business rather than personal expenses. Manifestly, only the Federal internal revenue laws can govern Federal income taxes. The issue is resolved in favor of respondent. In Docket No. 37 decision will be entered under Rule 50. In Docket No. 38 decision will be entered for respondent.