DAVID W. KARP and JULIET S. KARP, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent LOUISVILLE PUBLIC WAREHOUSE CO., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Karp v. Commissioner
Docket Nos. 8350-73, 8351-73, 2477-74.
United States Tax Court
T.C. Memo 1976-325; 1976 Tax Ct. Memo LEXIS 76; 35 T.C.M. (CCH) 1468; T.C.M. (RIA) 760325; October 26, 1976, Filed Edward M. Post,Robert A. Kohn, and William S. Bornstein, for the petitioners. Jack A. Joynt, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' Federal income tax as set forth below: Taxable Year Docket No.
Petitioners
Ended
Deficiency
8350-73
David W. Karp
12/31/69
$2,811.23
and Juliet S.
12/31/70
3,522.26
Karp
8351-73
Louisville Pub-
11/30/69
1,625.79
lic Warehouse
11/30/70
1,122.22
Co.
2477-74
Louisville Pub-
11/30/71
3,276.00
lic Warehouse
11/30/72
3,069.00
Co.
Certain issues have been disposed of by the parties, leaving for our decision the following: (1) Whether travel, meals and lodging expenses of stockholders paid by the corporation are includable in the income of the stockholders, and if so whether they are deductible by them as business expenses under section 162(a)(2), I.R.C. *79 1954; [1]
(2) whether traveling expenses paid by the corporation for its stockholders are deductible by the corporation; (3) whether the corporation may deduct the full costs of maintaining automobiles furnished its stockholders; (4) whether each stockholder who was furnished an automobile must include in his gross income a part of its fair rental value and if so whether he may take deductions for use of the automobile in his business activities other than for the corporation; and (5) whether expenses of maintaining an office in the individual petitioners' home and depreciation allocable thereto are deductible by the petitioners in amounts greater than allowed in respondent's notice of deficiency. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners David W. Karp and Juliet S. Karp, husband and wife, resided in Upper Key Largo, Florida at the time of filing their petition in this case. They filed joint Federal income tax returns for calendar years 1969 and 1970 with the Director, Internal Revenue Service Center, Chamblee, Georgia. Petitioner *80 Louisville Public Warehouse Co., a corporation organized under the laws of the Commonwealth of Kentucky, filed Federal corporate income tax returns for the fiscal years ending November 30, 1969, November 30, 1970, November 30, 1971, and November 30, 1972 with the District Director, Internal Revenue Service, Louisville, Kentucky. During these fiscal years and at the time of the filing of its petitions in this case the principal place of business of Louisville Public Warehouse Co. was Louisville, Kentucky. During the years 1969 through 1972 the stock of Louisville Public Warehouse Co. (hereinafter sometimes referred to as the corporation) was held in the following proportions: David W. Karp
32%
Juliet S. Karp
31%
Children of Mr. and Mrs. Karp [2]
37%
100% David W. Karp (Mr. Karp) was the president and chief operating officer of the corporation. Juliet S. Karp (Mrs. Karp) was the corporate secretary and a director of the corporation. James S. Karp (James), son of petitioners, was employed by the corporation as its executive vice president. Louisville Public *81 Warehouse Co. was engaged in leasing warehouse space, two farms, and several other pieces of real estate in Kentucky and Indiana during the years here in issue. These properties were valued at approximately $3 million. The corporation owned no property in Florida, although during this period Mr. Karp and James were examining properties there with a view to possible purchase. The corporation also operated a division which bought and sold coins and acted as a broker in such transactions for other parties. The operations of this division were performed principally by Mr. Karp and his brother. In connection with this division, Mr. Karp attended a number of numismatic shows, especially in Florida. The corporation employed 30 to 40 persons, all of whom worked solely in the Louisville area with the exception of Mr. Karp. The corporation's principal storage facilities were in the Louisville area, and its accounting functions were performed there. Mr. Karp acquired his interest in Louisville Public Warehouse Co. and became its chief operating officer in 1958. He and Mrs. Karp lived in Louisville until 1965 when they moved to Key Largo, Florida on the advice of Mr. Karp's physician *82 for reasons of his health. From 1965 up through the time of the trial of this case, Mr. and Mrs. Karp have continued to reside in Florida. Mr. Karp has been registered to vote in Florida since about 1968. During the years here in issue, Mr. Karp though living in Florida continued to supervise the operations of Louisville Public Warehouse Co. He had long distance telephone communications with personnel in Louisville at an average rate of 391 calls per year in 1969, 1970, 1971 and 1972. Written correspondence was exchanged on a daily basis between Mr. Karp and personnel in Louisville. Mr. Karp made all decisions of consequence regarding the operations of the corporation, such as salary raises, leasing of warehouse space, and rates. In addition to his directing the daily operation of the business of the corporation, Mr. Karp with the assistance of Mrs. Karp entertained customers of the corporation in Florida five or six times a year. Occasionally, these customers would stay overnight at a cottage owned and maintained by Mr. and Mrs. Karp. Two or three times a year Mr. Karp would represent the corporation at coin shows in Florida. On these occasions coins were selected by *83 Mr. Karp's brother from the Louisville warehouse and shipped to Mr. Karp to be carried to the shows.These shows were from 3 to 7 days in length. During the years here in issue Mr. Karp investigated several properties in Florida which he thought the corporation might be interested in buying. None of these properties were ever purchased by the corporation. During the years 1969 through 1972, Mr. Karp held investments of about 30 parcels of real estate in Florida with a value of approximately $200,000. Mr. Karp made some improvements on these properties, collected rents and generally managed the properties. On his Federal income tax return for the calendar year 1969 no income was reported from these properties and on his return for the calendar year 1970 Mr. Karp reported a loss from the operation of his Florida property holdings. During the years here in issue, Mr. Karp served as a consultant for Joseph E. Seagram & Sons and was paid $21,339.61 in 1969 and $13,000 in 1970 for his services to that company. These consultations were made by letter or telephone with a representative of Seagram's in New York City. Mr. Karp made occasional trips to New York to consult directly *84 with representatives of Seagram's but these representatives did not visit Mr. Karp in Florida. It was not necessary for these consultations that Mr. Karp be in Florida. In addition to his other activities, Mr. Karp personally managed a portfolio of stocks and bonds which he and Mrs. Karp owned with a value of approximately $250,000. Their dividend and interest income from this portfolio was $18,157.85 in 1969 and $22,153.55 in 1970. The Karps also realized substantial capital gains from their investments in 1969. While in Florida, Mr. Karp worked about 18 hours per day. He spent well over half his working time on his work for Louisville Public Warehouse Co. and considered this work his "major" business activity. He spent about the same amount of time working for the corporation when in Florida as he did when he was in Louisville. In addition to his activities for Louisville Public Warehouse Co. performed in Florida, it was necessary for Mr. Karp to travel to Louisville periodically to conduct the business of the corporation. His activities in Louisville included inspection of properties, visits with customers, and discussions with corporation personnel. He also attended *85 periodic meetings of the board of directors in Louisville. Mr. Karp spent 120 days in Louisville in 1969, 105 days in 1970, 120 days in 1971, and 70 days in 1972. The corporation maintained an office in Louisville for Mr. Karp continually during all years here in issue. Mrs. Karp accompanied Mr. Karp on all of his trips to Louisville. She helped entertain customers and she typed letters at night when Mr. Karp considered a delay until morning to be undesirable. She also prepared and gave Mr. Karp his insulin shots and watched his diet. Mr. Karp received a salary from Louisville Public Warehouse Co. of $38,880, $41,080, and $41,280 for the corporation's fiscal years ending on November 30 of 1969, 1971 and 1972, respectively. The Karps reported salary of $39,040 from the corporation on their 1969 Federal income tax return and $40,800 salary from the corporation on their 1970 return. In addition to the salary paid to Mr. Karp, the corporation paid or reimbursed Mr. and Mrs. Karp for their expenses of traveling to Louisville, including the expenses of their meals while there. The corporation also paid all but $100 per month of the cost of lodging for the Karps when they were *86 in Louisville. Louisville Public Warehouse Co. furnished an automobile to Mr. Karp, as well as to certain other of its employees. The car furnished Mr. Karp was in Florida with him about half the year and was in Louisville the other half. Occasionally, Mr. Karp left the car garaged in Louisville and returned to Florida without it. When in Louisville Mr. Karp drove the car from his lodging to the corporation offices and also drove it to various corporate properties. He occasionally used the car for purely personal purposes. In Florida, the car was used to pick up mail from the corporation, which was delivered to a post office box in Key Largo, and occasionally to transport customers of the corporation. Mr. Karp also used it for activities relating to his other business interests and occasionally for personal purposes. During the years 1969 through 1972, Mr. Karp personally maintained another automobile for personal use. The value of the car furnished Mr. Karp by the corporation, including maintenance, was $2,400 per year. During the years 1969 through 1972, the Karps owned a home in Key Largo, Florida in which they resided. The home contained 4 bedrooms, a living room, *87 a dining room and a kitchen. Three of the bedrooms were used exclusively for Mr. Karp's business interests. These rooms contained file cabinets, desks, and various papers and records of Louisville Public Warehouse Co. These bedrooms comprised 40 percent of the floor space of the house. The dining room was also used for business occasionally. During the fiscal years of Louisville Public Warehouse Co. ending in 1971 and 1972, it provided an automobile to James S. Karp, son of petitioners David W. and Juliet S. Karp and executive vice president of the corporation. He used the car to visit the corporation's properties, to call on clients, and for incidental personal matters. He also drove from his home to his office, a distance of 8 miles each way. James Karp was on call at night by the corporation when any emergency developed, such as damage to the warehouses or removal of goods after normal working hours. James Karp owned a car for his personal use. The value of the automobile furnished James Karp by the corporation, including maintenance, was $2,400 per year. Also during the 1971 and 1972 fiscal years of Louisville Public Warehouse Co., the corporation paid expenses of *88 travel by James Karp to visit his father David Karp in Florida. These trips were made about twice a year for the purpose of business discussions relating to the corporation. Personal reasons were no more than an incidental purpose of the visits. Respondent in his notice of deficiency to petitioners David W. Karp and Juliet S. Karp increased their income by $3,146.82 for 1969 and $4,868.51 for 1970, describing these increases as dividends resulting from payments made on their behalf by Louisville Public Warehouse Co. relating to use of an automobile, lodging in Louisville, Kentucky, and traveling expenses. [3] Respondent also disallowed for each of these years $1,500 of the $3,000 calimed by Mr. and Mrs. Karp as home office expenses. Respondent in his notices of deficiency to Louisville Public Warehouse Co. disallowed *89 $1,200 of the $2,400 deduction claimed by the corporation for expenses relating to the car provided to David W. Karp in each of its fiscal years ending November 30, 1969, 1970, 1971 and 1972. For each of the corporation's fiscal years ending November 30, 1971 and 1972 respondent disallowed $1,200 of the $2,400 claimed by the corporation for expenses relating to the car provided in those years to James S. Karp. For the corporation's fiscal years ending in 1970, 1971 and 1972, respondent disallowed deductions for the cost of lodging provided David W. Karp and Juliet S. Karp in Louisville in the amounts of $1,921.73, $2,580, and $2,580, respectively. [4]
Respondent in his notices of deficiency to Louisville Public Warehouse Co. also disallowed certain deductions claimed by the corporation for meals and traveling expenses of David W. Karp for its fiscal years ending in 1969 and 1970 and for certain other expenses for its fiscal years ending in 1971 and 1972 asserted to be nondeductible traveling expenses of its officers. The amounts disallowed for meals were $701 in 1969 and *90 $986.83 in 1970; the amounts disallowed for traveling expenses were $1,178.14, $828.12, $2,206 and $1,568 in its fiscal years ending in 1969, 1970, 1971 and 1972, respectively. The parties have stipulated that the actual amounts paid or incurred by Louisville Public Warehouse Co. for transportation expenses of Mr. and Mrs. Karp relating to their trips to Louisville were $726.50 and $488.25 for its fiscal years ending in 1971 and 1972, respectively, and that the amount expended for meals for the Karps in 1972 was $150. Respondent disallowed the amounts of $792.75 and $613.97 claimed by the corporation as a deduction for amounts expended for the traveling expenses of James S. Karp for the corporation's fiscal years ending in 1971 and 1972, respectively. Respondent has conceded that $686.75 and $316.10, respectively, of the amounts disallowed in 1971 and 1972 were properly allowable deductions of the corporation but contends that the balance of the claimed deductions which related to travel by James Karp to Florida was properly disallowed. OPINION Expenses of Travel, Meals and Lodging of Mr. and Mrs. Karp
Louisville Public Warehouse Co. paid amounts of travel, meals and *91 lodging expenses of Mr. and Mrs. Karp during the years here in issue. Petitioners on brief argue that if these amounts are included in their gross income, they should be entitled to deduct an equal amount as travel expenses. It is clear that no statutory exclusion applies to prevent the inclusion of the amounts paid by the corporation for the Karps in their income under section 61. See Commissioner v. Glenshaw Glass Co.,348 U.S. 426 (1955). Thus, in order to avoid taxation on the inclusion, the Karps must establish an offsetting deduction for the expenses paid on their behalf. Under section 262, no deduction is allowed for "personal, living, or family expenses," and ordinarily expenses of meals, lodging and travel by an individual taxpayer are nondeductible personal living expenses. Section 1.262-1(b)(5), Income Tax Regs.[5]However, Mr. and Mrs. Karp claim to be entitled to deduct their expenses of traveling to and living in Louisville under section *92 162(a)(2), which allows a deduction as trade or business expenses for "traveling expenses (including amounts expended for meals and lodging * * *) while away from home in the pursuit of a trade or business." Mr. and Mrs. Karp may succeed in this attempt only if they establish both that the expenses are not personal in nature, thus overcoming section 262, and that all conditions required by section 162(a) are satisfied. See Joel A. Sharon,66 T.C. 515 (1976). *93 The conditions for deduction of traveling expenses under the predecessor of section 162(a)(2) were outlined in Commissioner v. Flowers,326 U.S. 465, 470 (1946): (1) The expense must be a reasonable and necessary traveling expense, as that term is generally understood. This includes such items as transportation fares and food and lodging expenses incurred while traveling. (2) The expense must be incurred "while away from home." (3) The expense must be incurred in pursuit of business. This means that there must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or of his employer. Moreover, such an expenditure must be necessary or appropriate to the development and pursuit of the business or trade. These conditions are still applicable under present law. See, e.g., George Montgomery,64 T.C. 175 (1975), affd. 532 F.2d 1088 (6th Cir. 1976). As noted by the Court in Flowers,supra at 470, the satisfaction of each of these conditions "is purely a question *94 of fact in most cases." One condition of deductibility under section 162(a)(2) is that the expenses be incurred "while away from home." "Home" in this context has been construed by this Court to be a taxpayer's "tax home" which may differ from the taxpayer's residence. See, e.g., Ronald D. Kroll,49 T.C. 557 (1968). This Court has consistently held that the "tax home" of an individual is where his principal place of business is located even if that place is distant from the place where he maintains his residence. This rule applies whether a taxpayer has one place of business, e.g., Ronald D. Kroll,supra, or two, e.g., George Montgomery,supra.While the Fifth Circuit Court of Appeals has not specifically defined "tax home" as has this Court, it has in effect applied the same criteria to determining where a taxpayer's home is for purposes of allowance of a deduction for travel expenses "away from home." The Fifth Circuit holds that for the purposes of section 162(a)(2) "a taxpayer's 'home' is his abode at his principal place of business or employment. *95 " Curtis v. Commissioner,449 F.2d 225, 227 (5th Cir. 1971), affg. a Memorandum Opinion of this Court and Jones v. Commissioner,444 F.2d 508, 509 (5th Cir. 1971), affg. 54 T.C. 734 (1970). The parties in this case agree that only expenses for meals and lodging while "away from home" are deductible business expenses, but disagree on where the "tax home" of Mr. and Mrs. Karp was during the years here in issue. Petitioners argue that Mr. Karp's principal place of business was Upper Key Largo, Florida, and that he was away from home when in Louisville, Kentucky. Respondent argues just the reverse. [6] We agree with respondent. Mr. Karp performs his duties for the corporation both in Florida and in Louisville. He manages his real estate holdings in Florida; he does the managing of his *96 investment portfolio primarily in Florida and does some of the work connected with his consulting activities in Florida. Petitioner argues that he spent more time in Florida, engaged in more business activity there and earned more of his income from his Florida activities. From this he maintains that Florida was his principal place of business, citing Markey v. Commissioner,490 F.2d 1249 (6th Cir. 1974), affg. a Memorandum Opinion of this Court. While it is true that petitioner spent more time in Florida and worked there more than in Louisville, these factors are not sufficient alone to establish Florida as petitioner's principal place of business. Indeed, in this regard petitioner is in no different position than that of the taxpayer in Flowers,supra.[7] That taxpayer spent more time working and spent more time absolutely in Jackson, Mississippi than in Mobile, Alabama, yet the Supreme Court found his principal place of business to be Mobile. 346 U.S. at 468. Since the taxpayer in Flowers,supra, had no other business or business activity, the holding of the Court necessarily implies that the activity performed for the taxpayer's *97 employer, wherever performed, related to Mobile as a place of business and not Jackson. This position is justified by the facts that the taxpayer's presence was required in Mobile a substantial amount of the time, that Mobile was the normal post of duty for one in the taxpayer's position, and that work done in Jackson was done there because of personal preference rather than business exigency. For these same reasons, we find that the work of Mr. Karp performed for Louisville Public Warehouse Co. related to Louisville, Kentucky as a place of business, except the work required by the corporation to be performed in Florida such as coin shows and entertainment of customers. This conclusion is also evident from the close daily contact required between Mr. Karp and the other officers of the corporation.Mr. Karp's relationship in this regard did not differ substantially from that of corporate executives who supervise their subordinates from the corporate offices. *98 Of course, petitioner in this case may distinguish himself from the taxpayer in Flowers,supra, by his other business activities in Florida. However, assuming that the character of these activities is sufficient to establish a place of business in Upper Key Largo, Florida, [8] the quantity of these activities, even when combined with those activities of the corporation requiring Mr. Karp's presence in Florida, was certainly insufficient to render that location the principal place of business of petitioner. It is clear from the record and especially the statements of Mr. and Mrs. Karp that a relatively minor amount of Mr. Karp's time and energy was devoted to such activities as compared to the time he devoted to the business of the warehouse corporation. The great majority of Mr. Karp's time in Florida and all of his time in Louisville were devoted to business of the corporation other than that requiring his presence in Florida. Finally, the income earned by Mr. Karp from the corporation far exceeded the income earned from other activities in 1970 and roughly equalled it in 1969. [9] We therefore hold that the "tax home" of Mr. and Mrs. Karp was Louisville, Kentucky in *99 all the years here in issue. Thus, expenses of meals and lodging while Mr. and Mrs. Karp were in Louisville were not incurred while they were away from home and are therefore not deductible. Expenses of travel between Louisville and petitioner's residence in Florida present a somewhat different problem. Since Mr. Karp may *100 have been away from home while in Florida, he argues that this fact might justify deduction of the expense of travel. The answer to such an assertion is provided by such cases as Julio S. Mazzotta,57 T.C. 427 (1971), affd. per curiam, 465 F.2d 1399 (2d Cir. 1972); Thomas J. Green, Jr.,59 T.C. 456 (1972); and Matteson v. Commissioner,514 F.2d 43 (8th Cir. 1975), affg. a Memorandum Opinion of this Court. These cases hold that, even though a taxpayer performs some business of a minor nature at his residence, he may not deduct the expense of travel to this place of business if his travel to the place is principally motivated by a desire to return to his residence, a purely personal motive, and only incidentally by business reasons. We find that Mr. Karp's principal motive in returning to Florida from Louisville was a personal desire to return to his residence and thus, even if petitioner did have a minor business in Florida, the expenses of his travel to Florida are not deductible because of the provisions of section 262. Cf. Joel A. Sharon,supra.
Deduction of Traveling Expenses of the Karps Paid by *101 the Corporation
Louisville Public Warehouse Co. deducted in its tax years ending in 1969, 1970, 1971 and 1972 amounts it paid for expenses incurred by David W. and Juliet S. Karp in traveling from Florida to and from Louisville, Kentucky, including meals and lodging while in that city. It is clear from the testimony of the corporate officers and our holding with respect to the deductibility of the expenses by the Karps that this travel was in no way required by the business exigencies of the corporation. The travel expenses were merely the commuting expenses of its principal stockholders which were paid by the corporation solely for their benefit. For this reason the amount paid for the travel by the Karps is not an ordinary and necessary expense of the business of the corporation. The corporation contends that if the amount paid for the Karps is not properly deductible as a business expense for officer's travel, the payment of the expenses should be viewed as amounts necessarily paid by it to acquire the services of David W. Karp. This is tantamount to arguing that the payments were compensation for the services of Mr. Karp deductible under section 162(a)(1). Mr. Karp performed *102 services for the corporation as its chief executive, but he directly received for his services a substantial salary. Thus, the issue to be decided is whether the payments of expenses constituted additional compensation for Mr. Karp for services performed or whether they were corporate distributions under section 301 to Mr. and Mrs. Karp as stockholders. In the latter case the payments are not deductible by the corporation. The threshold question to be determined in deciding whether payments are deductible as compensation to officers under section 162(a)(1) is whether the payments were made with the intent to compensate the recipient. Paula Construction Co.,58 T.C. 1055 (1972), affd. without opinion, 474 F.2d 1345 (5th Cir. 1973); Electric & Neon, Inc.,56 T.C. 1324 (1971), affd. without opinion, 496 F.2d 876 (5th Cir. 1974). This is a factual question which turns on the particular facts of the case. Electric & Neon, Inc.,supra, at 1340. Under the facts here present we conclude that the payments by the corporation for traveling, meals and lodging of Mr. and Mrs. Karp were not intended *103 to compensate them for services performed and therefore these payments are not deductible by the corporation as compensation of officers. There is no evidence in the record to indicate the existence of the necessary intent for the payments to be compensation to the Karps. The amounts were not treated as compensation by either the corporation or the Karps. Mr. Karp did not include the payments in income on his tax returns for 1969 and 1970 as he did his salary from the corporation, and no W-2 forms regarding the payments accompanied his tax returns. The corporation did not claim the deductions as compensation of officers or as salaries and wages on its Form 1120's during the years in issue, but apparently claimed the amounts paid as part of its claimed sales and travel expenses. In view of the failure of the corporation to produce any substantial evidence of an intent to compensate its officers for services by the payments, the corporation has failed to prove that the payments are deductible as compensation for services. Respondent's determination with regard to the corporation's deduction of travel, meals and lodging expenses of David W. and Juliet S. Karp, as adjusted by the *104 stipulation of the parties, is found to be correct. Automobile Furnished David W. Karp
During each of the years 1969 through 1972, Louisville Public Warehouse Co. furnished an automobile to David W. Karp. It paid all operating and maintenance expenses of this car. The parties have stipulated that the total value of the automobile provided Mr. Karp was $2,400 per year. Respondent disallowed $1,200 of the $2,400 deduction claimed in each year by the corporation for expenses of furnishing the automobile to Mr. Karp and included the $1,200 disallowed amount in the gross income of David Karp. Although there is some testimony to the contrary, we conclude from the record as a whole that the automobile was not furnished to David Karp with the intent to compensate him for services performed for the corporation. The treatment of the deduction claimed for the automobile and the failure of the corporation to include the value of furnishing the car on the W-2 form issued to Mr. Karp and Mr. Karp's failure to include in his income any amount as compensation because of the car being furnished to him indicate that it was not the intent of the corporation to compensate Mr. Karp by furnishing *105 him a car. The facts with respect to intent are essentially the same with respect to the automobile as with respect to traveling expenses heretofore discussed. For the reasons stated there, we conclude that the costs relating to furnishing the automobile to Mr. Karp are not deductible by the corporation as compensation for services rendered to it. See Motel Company v. Commissioner,340 F.2d 445, 448-49 (2d Cir. 1965), affg. a Memorandum Opinion of this Court. Insofar as the automobile was substantially used by David Karp for his personal use or for his own business unrelated to that of the corporation, the expeses associated with the automobile are not in themselves ordinary and necessary business expenses of the corporation and the depreciation of the automobile is not with respect to property used in a trade or business of the corporation. Deductions relating to uses of the car other than for the corporate business are not allowable to the corporation. International Artists, Ltd.,55 T.C. 94 (1970). Where there is both substantial business and *106 substantial personal use, the expenses must be allocated and only those related to business use are deductible. See, e.g., Clarence J. Sapp,36 T.C. 852 (1961), affd. per curiam 309 F.2d 143 (5th Cir. 1962). The corporation's deduction for furnishing the car to Mr. Karp is limited to the portions of the use by David Karp of the car for pursuits related to the business of Louisville Public Warehouse Co.
Mr. Karp testified that 75 percent of his use of the automobile was related to the business of the corporation, 20 percent to his other businesses and 5 percent to purely personal activity. This testimony is the only evidence directly on this point. It is clear from the record, however, that the automobile was used by the Karps as transportation on at least some of their trips to Louisville. Since we have held that these trips were not required by the business exigencies of the corporation, they were personal commuting trips by the Karps to Mr. Karp's principal place of business. Mr. Karp also used the car to commute to and from work in Louisville. Mr. Karp based his 5 percent figure of personal use of the automobile on estimated miles driven. This *107 figure is far too low to include even one round trip to Louisville, or his travel to and from work in Louisville. The record as a whole indicates that all travel to and from Louisville as well as driving to and from work in Louisville was included in Mr. Karp's 75 percent figure for corporation business use of the automobile. Therefore, Mr. Karp's estimate of 75 percent use of the automobile for corporate business must be reduced by the amount of this mileage driven. In our view Louisville Public Warehouse Co. has presented no convincing evidence that the amount of personal and private business use of the automobile by David Karp was less than 50 percent of the total use of the car. Therefore, we hold that respondent's determination that only one-half of the cost of furnishing the automobile to Mr. Karp is deductible by the corporation to be correct. It has frequently been held that there is included in the gross income of a stockholder the value of an automobile, or other corporate property, furnished him for substantial use unrelated to the business of the corporation. E.g., Commissioner v. Riss,374 F.2d 161 (8th Cir. 1967), *108 affg. on this issue and revg. on other issues a Memorandum Opinion of this Court; Estate of William F. Runnels,54 T.C. 762 (1970); Rodgers Dairy Co.,14 T.C. 66 (1950). It is clear from the above discussion that petitioners made substantial use of the automobile furnished them for personal activities and for business of the Karp's unrelated to that of the corporation. We have held that the use of the automobile by the Karps for the corporation's business was not in excess of the 50 percent determination by respondent. Therefore, we hold that the gross income of Mr. and Mrs. Karp for 1969 and 1970 is properly to be increased by the $1,200 amount for use of the automobile determined by respondent, no statutory exclusion having been established. Mr. Karp argues that if his gross income is increased by the $1,200 amount, he is entitled to a deduction under sections 162 (a), 212 or 167, for the use of the automobile in his businesses other than as an officer of the corporation. The record shows that Mr. Karp used the automobile in connection with his real estate activities and possibly made some use of it in connection with his management of his *109 investments and consulting work. Mr. Karp estimated this usage as about 20 percent of the total usage of the car. Considering the record as a whole, we conclude that Mr. Karp has shown that $480 of the cost of the car related to use of the car by him for purposes relating to the production of income or businesses other than as an officer of the corporation. Since we have included $1,200 of the cost of furnishing the car to Mr. Karp in his income, we conclude he is entitled to offset that amount by a deduction of $480 for the use of the car for other business purposes or as relating to production of income. Automobile and Travel of James S. Karp
Respondent disallowed certain deductions taken by Louisville Public Warehouse Co. during its fiscal years ending in 1971 and 1972 relating to an automobile furnished James S. Karp and to travel by James Karp to Florida. Respondent has determined that one-half of the use made by James Karp of the automobile furnished to him by the corporation was personal and that the travel to Florida was not an ordinary and necessary business expense of the corporation. We conclude that the use of the automobile was not provided to James Karp *110 by the corporation as additional compensation deductible to the corporation under section 162(a)(1) since there is no substantial evidence in this record to establish the requisite intent that the use of the car be compensation to him. See Motel Company,supra.
James Karp testified that 95 percent or more of the use of the automobile furnished him by the corporation was for the business of the corporation. However, the automobile was used by James Karp for transportation between his residence and his principal place of work. Such commuting is a distinctly personal expense of the employee and usually is not itself an ordinary and necessary business expense of the corporation. Depreciation on corporate property which is partly used for personal purposes by a corporate officer is not deductibel in full by the corporation under section 167. International Artists, Ltd.,supra.The fact that the employee is on call by the employer in emergencies does not change the nature *111 of the expense of the employee in going to and from work from personal commuting expense to a business expense of the employer. See Margaret G1lotta Sheldon,50 T.C. 24 (1968); Clarence J. Sapp,36 T.C. 852 (1961), affd. per curiam 309 F.2d 143 (5th Cir. 1962). James Karp testified that he was required to take the automobile home because the corporation provided no safe place to keep it overnight. However, the record does not establish that the safety afforded at James Karp's home for the car significantly exceeded that at the corporation's business premises so as to justify the driving of the car to James' home as a business expense of the corporation. On this record, we conclude that no legitimate business purpose was served by the use of the automobile by James Karp for commuting. The use of the car by James for commuting was a substantial personal use of the automobile, and the expenses of that use are not deductible by the corporation. This record does not show the mileage traveled by James in the car for business use as compared to personal use including commuting. In view of the corporation's failures in this regard, we *112 conclude that it has failed to establish that the determination of respondent that only half of the cost of furnishing a car to James is deductible by the corporation is in error. The traveling expenses of James Karp disallowed as a deduction to the corporation were incurred in traveling between Louisville, Kentucky and the Florida residence of David and Juliet Karp. These trips were made for the purpose of discussing and conducting the business of Louisville Public Warehouse Co. Respondent argues that, because David Karp resided in Florida by personal choice and not because required to do so by the corporation, the expenses of James in traveling to Florida to consult with him were not ordinary and necessary expenses of the corporation. Respondent cites no authority for this assertion and does not develop his rationale. There is no assertion that the travel was a personal expense of James Karp or that it was unreasonable in amount; rather, it appears that the travel was directly attributable to the corporation's business. We conclude that these expenses are deductible by the corporation under section 162(a). Home Office Expenses
Respondent determined that $1,500 of *113 the $3,000 claimed by Mr. and Mrs. Karp in 1969 and 1970 as a deduction for home office expenses was not an allowable deduction. In his notice of deficiency respondent merely explained that Mr. and Mrs. Karp had not shown that they were entitled to deduct more than $1,500 for expenses of maintaining an office in their home. On brief respondent argues that to the extent Mr. Karp used his office at home for the business of Louisville Public Warehouse Co., the expenses are not deductible since Mr. Karp was provided an office in which to do this work in Louisville, Kentucky. Respondent contends that because of this fact the expenses of a second office in Upper Key Largo, Florida for use for conducting business of the corporation were incurred by Mr. and Mrs. Karp for personal reasons. Mr. and Mrs. Karp maintained three bedrooms of their four-bedroom house exclusively for business use. These rooms contained only office furniture and various papers and records related to the business interests of petitioners. The record indicates that no other use was made of those portions of the house and that, in fact, they were suitable for no other use because of their furnishings. However, the *114 record totally fails to show the cost expended by petitioners for utilities for their home, the cost of the home to them to form a basis for determining yearly depreciation, or the cost of upkeep of the home including repairs. Because of this failure of proof, we have no basis in this record on which to determine whether 40 percent of the costs to Mr. and Mrs. Karp of maintaining their home, including depreciation, exceeded the $1,500 yearly deduction allowed by respondent to the Karps as home office expense. Instead of providing the Court with the expenses of operating their home, Mr. and Mrs. Karp have asserted that the fair rental value of their home with all expenses furnished was between $6,000 and $8,000 and that the rental value of comparable office space would be $275. However, the Karps did not rent their home and these amounts were not paid or incurred by them as costs and therefore form no basis for a deduction. George Montgomery,supra.
Since Mr. and Mrs. Karp have failed to prove the amount of their expenses for maintaining their home, we have examined the record before us to ascertain if there is any basis for reasonable estimate of such expenses. We find *115 that the facts before us do not justify an estimate of expenses of Mr. and Mrs. Karp for their home which would justify deductions in excess of the $1,500 allowed by respondent each year for home office expense, even allowing 40 percent or more of the total costs as deductible. Since there is no basis in this record for allowing Mr. and Mrs. Karp a deduction in each year in excess of $1,500 for home office expense assuming 40 percent of their home was used exclusively for business purposes, we do not reach the issue argued by the parties of the deductibility of expenses for office space used by Mr. Karp for conducting business of Louisville Public Warehouse Co. See Joel A. Sharon,66 T.C. 515 (1976) and Merrill Lee Meehan,66 T.C. 794 (1976). We hold that Mr. and Mrs. Karp have failed to show error in the respondent's determination of $1,500 of the amount claimed by him in each year here in issue as home office expense. Decisions will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. One of petitioners' children owned 7 percent, and five other children owned 6 percent each.↩
3. The statutory notice of deficiency listed these asserted dividends by categories as follows: 1969
1970
Value of Car
$1,200.00
$1,200.00
Lodging
1,921.23
Travel Expenses
1,946.82
1,747.28
$3,146.82
$4,868.51 It is stipulated that the corporation paid the above amounts for lodging and traveling expenses of Mr. and Mrs. Karp.↩
4. It is stipulated that such amounts were paid by the corporation for lodging for Mr. and Mrs. Karp.↩
5. This regulation states: Sec. 1.262-1(b)(5). Expenses incurred in traveling away from home (which include transportation expenses, meals, and lodging) and any other transportation expenses are not deductible unless they qualify as expenses deductible under section 162, § 1.162-2, and paragraph (d) of § 1.162-5 (relating to trade or business expenses), section 170 and paragraph (a)(2) of § 1.170-2 or paragraph (g) of § 1.170A-1 (relating to charitable contributions), section 212 and § 1.212-1 (relating to expenses for production of income), section 213(e) and paragraph (e) of § 1.213-1 (relating to medical expenses) or section 217(a) and paragraph (a) of § 1.217-1 (relating to moving expenses). The taxpayer's costs of commuting to his place of business or employment are personal expenses and do not qualify as deductible expenses.The costs of the taxpayer's lodging not incurred in traveling away from home are personal expenses and are not deductible unless they qualify as deductible expenses under section 217. Except as permitted under section 162, 212, or 217↩, the costs of the taxpayer's meals not incurred in traveling away from home are personal expenses.
6. The parties have stipulated that certain of the disallowed expenses, specifically those of travel and meals but not lodging, in the calendar years 1969 and 1970 of Mr. and Mrs. Karp and in the fiscal years ending in 1969, 1970, 1971 and 1972 of the corporation, are allowable if the "tax home" of Mr. and Mrs. Karp is Upper Key Largo, Florida.↩
7. The taxpayer in Flowers resided in Jackson, Mississippi and during the years involved in that case spent the majority of his time there. However, he was employed by a corporation the principal place of business of which was Mobile, Alabama. Because the taxpayer was largely free to work in either location, he performed more of his work for the employer while in Jackson, traveling to Mobile to work only when necessary. He attempted to deduct the cost of traveling to and from Mobile and the expenses of his meals and lodging while there. The Supreme Court expressly avoided any consideration of the tax home issue and denied the deduction because the Court found no relationship between the travel and the business of the taxpayer or his employer. The expenses were in the nature of personal commuting expenses of the taxpayer and were "unnecessary and inappropriate to the development" of the employer's business. 346 U.S. at 473. While such travel may have been necessary for the performance of the taxpayer's duties in Flowers, it was an expense resulting from the personal choice of the taxpayer to reside at a place removed from his work. See, e.g., Steinhort v. Commissioner,335 F.2d 496↩ (5th Cir. 1964), affg. a Memorandum Opinion of this Court.
8. In some instances activities such as those of petitioner in Florida have been held insufficient to establish a business at the second location. See, e.g., Alfred H. Bisson,T.C. Memo. 1975-168. [34 T.C.M. 747; also Maurice V. Barnhill,3 T.C.M. 514 (1944)] On the other hand, such activities have been held to constitute such a business in other cases. See, e.g. J. Paul Preseault,T.C. Memo. 1975-146. [34 T.C.M. 685↩]
9. These figures become even less favorable to petitioners if the income from consulting and investments which Mr. Karp would have earned regardless of his presence in Florida is excluded from consideration, as perhaps it should be. Cf. Maurice M. Wills,48 T.C. 308, 313 (1967), affd. 411 F.2d 537↩ (9th Cir. 1969).