WADE H. SNELL, JR., and JOAN W. SNELL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Snell v. Commissioner
Docket No. 5811-77.
United States Tax Court
T.C. Memo 1979-141; 1979 Tax Ct. Memo LEXIS 384; 38 T.C.M. (CCH) 635; T.C.M. (RIA) 79141; April 11, 1979, Filed Wade H. Snell, Jr., pro se. Vernon R. Balmes, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined a deficiency of $2,472.60 in petitioners' Federal income tax for 1973. Concessions having been made, we must decide the extent to which, if any, petitioners are entitled to deduct certain fees and related expenses paid by Wade H. Snell, Jr., in connection with his becoming a member of Lloyd's of London. FINDINGS OF FACT Some of the facts have been stipulated and are so found. At the time of filing their petition herein, Wade H. and Joan W. Snell, Jr., husband and wife, resided *386 in Menlo Park, Calif.
In 1973 petitioner Wade H. Snell, Jr. (hereinafter petitioner) was an investor managing his own portfolio. At that time he learned of the opportunity to join Lloyd's of London (Lloyd's) from an existing member. After discussing the matter with various people associated with Lloyd's, petitioner filed an application for membership dated August 6, 1973. Lloyd's is a collection of about 200 insurance underwriting firms banded together in one large corporation. The firms use the personal credit of individuals, such as petitioner, as backing to write insurance. In this connection, petitioner dealt with the specific firm of Barder and Marsh on becoming a member of Lloyd's. Before petitioner could become an underwriting member of Lloyd's, he was required to make certain outlays which included: (1) Payment of a nonrefundable [1] entrance fee of 2,000 pounds ($4,660 converted at the prevailing rate of $2.33 per pound sterling); (2) Payment of an annual subscription fee of $582.50; and (3) Payment of $47.95 for the preparation of certain deeds. Further, *387 Lloyd's required a personal interview of petitioner and his wife. In this regard, petitioner and his wife traveled to London in October 1973 where they spent four days, during which time petitioner was interviewed by representatives of Lloyd's concerning his application for membership. Petitioners' air fare and expenses allocable to this trip totaled $1,534.60. Subsequently, in December 1973 petitioner was informed that he had been elected an Underwriting Member of Lloyd's effective as of January 1, 1974. Upon receipt of his acceptance, petitioner paid the entrance fee, the annual subscription fee for 1974, and the fee for preparing certain documents. As a member of Lloyd's, petitioner was entitled to receive a portion of any profits realized by Lloyd's on Lloyd's investment of insurance monies and on its insurance underwritings. [2] In addition, petitioner had unlimited personal liability on various underwriting arrangements into which he would enter. [3]
Petitioner's membership *388 in Lloyd's is effective for so long as he remains in good standing and pays the annual subscription fee. This membership is personal to petitioner and may not be transferred or assigned by him to any other person. Additionally, petitioner's membership may not be devised or bequeathed upon his beath; nor may it be pledged, encumbered, hypothecated, or used as security. In computing their taxable income for 1973, petitioners deducted the entrance fee, the annual subscription fee, and the fee to cover the preparation of deeds totalling $5,290.45. They also deducted the air fare and expenses of $1,534.60 paid in connection with their trip to London. In his statutory notice of deficiency, respondent disallowed these deductions in their entirety based on his belief that such expenditures were capital in nature. OPINION In 1973 petitioner was an investor managing his own portfolio. During that year, he deducted various expenditures made by him in becoming a member of Lloyd's of London. Specifically, petitioner paid and deducted an entrance fee of $4,660, a fee of $47.95 to help defray the cost of preparing certain deeds, and an annual subscription fee of $582.50. In addition, *389 petitioner and his wife traveled to London to be interviewed by Lloyd's, during which time petitioner incurred and subsequently deducted travel expenses of $1,534.60. Respondent on brief has conceded the current deductibility of the annual subscription fee of $582.50. Thus, remaining for our decision is the extent to which, if any, petitioner is entitled to deduct the entrance fee, the fee to prepare the deeds, and the travel expenses associated with his becoming a member of Lloyd's of London. Respondent's position is that the expenditures in issue are capital in nature and, as such, are not currently deductible by petitioner. Moreover, he asserts that petitioner is not entitled to amortize these costs because they were incurred to acquire certain rights which have an indefinite life. In support of his position, respondent argues that as a member of Lloyd's petitioner is entitled to share in its profits so long as petitioner may wish to remain a member. Petitioner's position is that the expenditures in issue are deductible under either section 162(a) [4] or section 212(1) as ordinary and necessary expenses. He argues that the unique character of a member's relationship with *390 Lloyd's is not comparable to any investment in the United States. He maintains that this "uniquencess" is evidenced by the following factors: unlimited personal liability without a voice in management; members are not permitted to resign for three years; any division of profits or losses is delayed for three years; admission may be secured only upon the recommendation of a member and the seconding of another member; and that membership is personal and nontransferable. Thus, he reasons it is this unique relationship which justifies the current deductibility of the amounts in question. Alternatively, petitioner contends that if the expenditures in issue must be capitalized, he is nevertheless entitled to amortize such costs over his professional life expectancy. For the reasons set forth below, we hold that the amounts in issue must be capitalized, and that petitioner is entitled to amortize such amounts over his life expectancy. It is well settled that an expenditure to acquire an asset which will benefit the taxpayer for a period lasting beyond the taxable year is treated as a capital investment *391 and is not currently deductible. Heigerick v. Commissioner,45 T.C. 475, 478 (1966); Ryman v. Commissioner,51 T.C. 799, 802 (1969); Webb v. Commissioner,55 T.C. 743, 744 (1971). In the present case, the entrance fee, the fee to defray the cost of preparing certain deeds, and the travel costs were nonrecurring outlays made by petitioner to secure his membership in Lloyd's. This membership entitles petitioner to share in any profits realized by Lloyd's and will continue until petitioner's resignation or death. Thus, the benefits acquired by petitioner will extend beyond the years in which the payments were made. Therefore, we hold that the expenditures are capital in nature and not deductible as an ordinary and necessary expense in the year of payment. [5]
In connection with the question of whether petitioner may amortize under section 167 the expenditures in issue, *392 regulation section 1.167(a)-3, Income Tax Regs., in part, provides: If an intangible asset is known from experience or other factors to be of use in the business or in the production of income for only a limited period, the length of which can be estimated with reasonable accuracy, such an intangible asset may be the subject of a depreciation allowance. * * * In Sharon v. Commissioner,66 T.C. 515 (1976), affd. per curiam     F.2d     (9th Cir., Nov. 24, 1978), we held that the cost of acquiring a license to practice law was a capital expenditure amortizable over the taxpayer's life expectancy. As is the case with an attorney's license to practice law, petitioner's membership in Lloyd's is nonassignable and will terminate upon his death. Therefore, under the reasoning of our decision in Sharon and the cases cited therein, we hold that petitioner is entitled to amortize over his life expectancy the entrance fee, the fee for preparing certain deeds, and the travel costs in connection with his becoming a member of Lloyd's. [6]
*393 Petitioner argues that he should be permitted to amortize the costs over his professional life expectancy, which he claims will be another seven years. The mere assertion by petitioner that he intends to resign from Lloyd's at the end of a seven year period "is not sufficient to establish the shorter useful life for which he argues." Sharon v. Commissioner,supra, at 530. [7]
To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. This entrance fee was not refundable at any time during petitioner's lifetime or after his death.↩
2. In June 1977 petitioner received his first profits of $2,900. ↩
3. Prior to his becoming a member of Lloyd's, petitioner had neither sold casualty insurance nor acted as an insurance underwriter.↩
4. All section references are to the Internal Revenue Code of 1954, as amended.↩
5. We fail to see, and petitioner has not enlightened us, as to why his "unique" relationship with Lloyd's in any way alters the conclusion that through his membership in Lloyd's, petitioner has acquired a benefit that will extend beyond the year of payment.↩
6. Under our holding, petitioner is entitled to deduct a ratable portion of the total capitalizable costs each year beginning with 1974, his first year as a member of Lloyd's. For those taxable years in which petitioner has already filed his returns without properly claiming the deduction, he has the right to file amended returns. To the extent the three-year statute of limitations on filing an amended return has run for any of those taxable years, petitioner has the right under secs. 1311-1314 to file claims for refund.↩
7. Of course, if petitioner does resign from Lloyd's prior to his death, he will be permitted to deduct any remaining unamortized cost at that time.↩